# Pennsylvania Turnpike Commission Appeal.

Argued Dec. 1, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*James Gregg,* with him *John D. Faller,* for appellant.

*Carroll Caruthers,* with him *William A. Meyer, Kountz, Fry, Staley & Meyer, John D. McIntyre* and *Reed, Smith, Shaw & McClay* for appellees.

OPINION BY MR. JUSTICE HORACE STERN, January 2, 1945:

The question is whether a State Mining Commission convened pursuant to the Act of June 1, 1933, P. L. 1409, as amended, has jurisdiction to determine what coal must be left in place to support the Pennsylvania Turnpike.

Carpentertown Coal & Coke Company, lessee of coal of the Connellsville seam belonging to the William Thaw "Coke Trust", filed a petition in the Court of Common Pleas of Westmoreland County for the convening of a

State Mining Commission to determine what coal underlying and adjacent to the Pennsylvania Turnpike in Mount Pleasant Township was needed for the purpose of furnishing vertical and lateral support to the turnpike, and to assess the damages for the appropriation of such coal. The President Judge of the County thereupon requested the Public Utility Commission, the Secretary of Mines, the Secretary of Highways, the Chairman of the Pennsylvania Turnpike Commission,* and the Carpentertown Coal & Coke Company, to designate representatives who, together with himself, would compose the Commission. The Turnpike Commission made no designation but its counsel appeared de bene esse before the State Mining Commission as thus convened and moved to dismiss the proceedings on the ground that the Turnpike Commission is not subject to the jurisdiction of a State Mining Commission and that the determination of the coal necessary to be left in place for the support of the turnpike and the damages payable by reason of any appropriation thereof lies with the Turnpike Commission alone. The State Mining Commission made an order refusing the motion to dismiss. The Turnpike Commission appeals.

. The Act of June 1, 1933, P. L. 1409, provided that whenever the Commonwealth should acquire an easement for highway purposes upon lands underlaid by mineable coal the Secretary of Highways was authorized to enter into agreements with the owner of the coal, or the person entitled to remove the same, as to the amount to be left in place for the purpose of support; the damages were to be determined in accordance with the laws relating to the determination of damages for the relocating of State highways. The title to this act specifically

---

* Query, whether the Secretary of Highways and the Chairman of the Pennsylvania Turnpike Commission were both entitled to designate representatives as members of the Commission.

referred to State highways only. An amendatory Act of July 18, 1935, P. L. 1306, created the Highway Mining Commission and gave it authority to determine the amount of coal that must be left in place and to assess the resulting damages. This act likewise referred only to State highway routes. Then followed the re-enacting and amendatory Act of May 26, 1937, P. L. 891, which altered the title but still retained therein the limiting reference to State highways and State highway routes. Since, by section 15 of the Act of May 21, 1937, P. L. 774, which created the Pennsylvania Turnpike Commission as an instrumentality of the Commonwealth, the turnpike was not to become a part of the system of State highways until all the bonds of the Commission should have been paid or provided for, there would seem to be no doubt that none of this legislation vested in the Highway Mining Commission the jurisdiction necessary to sustain the petition of the Carpentertown Coal & Coke Company. But the re-enacting and amendatory Act of July 3, 1941, P. L. 259, effected a vital change in this regard. In place of the Highway Mining Commission it provided for State Mining Commissions on which it conferred exclusive jurisdiction, not merely where easements were acquired for State highway purposes, but over all cases of coal underlying lands, easements or rights of way acquired by the Commonwealth, and it further provided that, instead of the Secretary of Highways, the head of any department, board or commission of the State government which owned such lands, easements or rights of way, or his designated representative, should be a member of the Commission. Thus the jurisdictional scope of the State Mining Commission was expressed in terms which clearly covered the turnpike.

When, in 1938, the Turnpike Commission appropriated the lands and easements necessary for the construction of the turnpike and, in 1939, entered upon the lands for that purpose, it thereby appropriated

the subjacent strata so far as necessary to support the surface of the highway: *Glen Alden Coal Company Case,* 350 Pa. 177, 181, 38 A. 2d 37, 39. Under the Act of 1941, therefore, the determination of the amount of coal underlying the turnpike which should be left in place and the assessment of the resulting damages must now be determined by a State Mining Commission, because, while the act expressly stated that it should not be construed as creating any new right of action or procedure, it provided that it should apply not only to all lands, easements or rights of way that might thereafter be acquired by the Commonwealth but also to those theretofore acquired, and there can, of course, be no constitutional objection to an act being made retroactive in regard to a mere procedural mechanism.

It is argued that the Act of 1941 provided that the damages as finally determined should, if payable by the Commonwealth, be paid out of funds appropriated to the department, board or commission involved, and that there is no such fund for the payment of any damages which may be awarded in the present case. However, Section 3(d) of the Act of May 21, 1937, P. L. 774, prescribes that the cost of the turnpike shall embrace the cost of all lands, rights and easements acquired which are necessary for its construction, and Section 8 provides that, if the bonds issued by the Turnpike Commission for the purpose of paying the cost shall not have produced enough proceeds for that purpose, additional bonds may be issued to supply the amount of such deficit. Thus there is ample provision for the payment of any damages which, in these proceedings, may be determined and assessed by the State Mining Commission.

The order is affirmed.