341 A.2d 481

**Irving SPECTER and Marie Specter, his wife, Appellants,**

**v.**

**COMMONWEALTH of Pennsylvania and Pennsylvania Turnpike Commission.**

Supreme Court of Pennsylvania.

Argued Jan. 17, 1975.

Decided July 7, 1975.

Jones, C. J., and Eagen and O'Brien, JJ., dissented in part.

Roberts, J., filed concurring and dissenting opinion in which Nix, J., joined.

Manderino, J., filed concurring and dissenting opinion.

Harris T. Bock, Mendel & Schwartz, P. C., M. Mark Mendel, Philadelphia for appellants.

Burton D. Morris, Deputy Atty. Gen., Harrisburg, for appellee, Pa. Turnpike Commission.

Jack M. Stover, Robert J. Woodside, Shearer, Mette, Hoerner & Woodside, Lawrence Silver, Deputy Atty. Gen., Chief, Civ. Litigation, Robert P. Kane, Atty. Gen., Harrisburg, for appellee Commonwealth of Pennsylvania.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

POMEROY, Justice.

Appellants, Irving Specter and Marie, his wife, have sued the Commonwealth of Pennsylvania and the Pennsylvania Turnpike Commission [hereinafter "Commission"] alleging that they were injured in a collision on the Turnpike caused solely by the neglience of a Commission employee, driving a Commission-owned vehicle, in making an illegal U-turn without warning while traveling at a high rate of speed.

Preliminary objections in the nature of a demurrer were sustained because of the bar of sovereign immunity, and the complaint was dismissed. This appeal followed.[1]

[1]. Act of July 31, 1970, P.L. 673, No. 223, Art. II, § 203, 17 P.S. § 211.203 (Supp.1974).

We are thus again presented with challenges to the immunity of the Commonwealth and the Commission from suit for liablity in tort.

## I

Article I, Section 11, of the Constitution of Pennsylvania, P.S., provides in part that "suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct." This Court has repeatedly and recently construed the quoted language as imposing a constitutional bar to suits against the Commonwealth of Pennsylvania and as leaving it to the legislature to determine how and when this bar shall be lifted.[2] As we said in *Brown v. Commonwealth*, 453 Pa. 566, 572, 305 A.2d 868, 871 (1973), "[w]hether the doctrine of sovereign immunity should be modified in this Commonwealth is a legislative question. We could not base a contrary holding upon our impatience with the Legislature's failure to act as speedily and comprehensively as we believe it should." We remain of this opinion, founded as it is in the conviction that the bar to suit absent legislative direction to the contrary is constitutionally mandated. The legislature having chosen to maintain the immunity of the sovereign as to suits of this character, the action against the Commonwealth may not be maintained, and the trial court was correct in sustaining the preliminary objections and dismissing the complaint as to the Commonwealth.

## II

After mature consideration, however, we conclude that the immunity enjoyed by the Commonwealth does not ex-

---

**2.** See *Sweigard v. Department of Transportation,* 454 Pa. 32, 309 A.2d 374 (1973); *Brown v. Commonwealth,* 453 Pa. 566, 305 A.2d 868 (1973); *Commonwealth v. Orsatti,* 448 Pa. 72, 292 A.2d 313 (1972); *Bannard v. New York State Nat. Gas Corp.,* 404 Pa. 269, 172 A.2d 306 (1960); see also *Biello v. Pennsylvania Liquor Control Board,* 454 Pa. 179, 301 A.2d 849 (1973) (opinion of Mr. Justice O'Brien, speaking for himself and Mr. Chief Justice Jones).

tend to the Commission. The action against it must therefore be allowed to proceed. The remainder of this opinion elucidates the basis for this holding.

We acknowledge at the outset that this Court has twice held that the Commission shares the immunity of the Commonwealth and is therefore not subject to suits arising out of the negligence of its agents and employees in the course of their maintenance of the Turnpike. *Rader v. Pennsylvania Turnpike Commission,* 407 Pa. 609, 182 A.2d 199 (1962); *Thomas v. Baird,* 433 Pa. 482, 252 A.2d 653 (1969). Both of these cases, however, preceded our decision in *Ayala v. Philadelphia Board of Education,* 453 Pa. 584, 305 A.2d 877 (1973), in which we discarded the doctrine of immunity insofar as it applied to political subdivisions or governmental entities other than the Commonwealth itself. This doctrine, being a product of judicial decision as distinguished from constitutional directive, we felt free to abolish.[3] It is no longer possible, therefore, for a governmental body to avoid suit simply because of its governmental nature. Rather, whether any governmental entity is amenable to suit depends upon whether it is or is not part of the "Commonwealth" as that term is used in Article I, Section 11, of the Constitution, which establishes the immunity of the Commonwealth. If it is such a part, it is immune from suit; but if it is not, it is subject to suit.

Although the opinion in *Rader* seems to equate the immunity of the Commission with that of the Commonwealth, in neither *Rader* nor *Baird* was it expressly held that the Commission is part of the Commonwealth, and, as we have just observed, both cases were decided at a time when such a holding was not strictly necessary to sustain the Commission's claim of immunity. In light of

---

3. For an elaboration of this rationale, see part III of the opinion of the Court in *Ayala,* 453 Pa. at 599–603, 305 A.2d at 885–86, and the concurring opinion of this writer in *Brown v. Commonwealth,* 453 Pa. at 572, 305 A.2d at 872.

our abrogation of governmental immunity in *Ayala* and the trend in recent years to do away with immunities from suit which are neither constitutionally nor statutorily compelled,[4] we deem it appropriate at this time to re-examine the question whether the Pennsylvania Turnpike Commission is immune from suit. This involves a scrutiny of its status in the governmental framework of Pennsylvania.

Whether the Commission is part of the "Commonwealth" as that term is used in Article I, Section 11, of the Constitution of Pennsylvania, and so cloaked with the immunity which the sovereign enjoys, depends upon the nature of the Commission and its relationship to other statewide governmental bodies. In making this determination we must be guided by the legislative acts creating the Commission and defining its purposes and powers and by judicial decisions in which the status of the Commission was at issue.

## A.   *The statutory basis of the Turnpike Commission.*

The Turnpike Commission was created and is governed in general by the Act of May 21, 1937, P.L. 774, No. 211, § 1 et seq., 36 P.S. § 652a et seq. [hereinafter "the Act"]. Section 4 of the Act, 36 P.S. § 652d, constitutes the Commission as an "instrumentality of the Commonwealth" and describes the exercise of its powers as "an essential governmental function of the Commonwealth." Section 4 further states that the Commission "may sue and be sued, plead and be impleaded, contract and be contracted with, and have an official seal." Section 11 of the Act, 36 P.S. § 652k, provides that "the commission shall not be required to pay any taxes or assessments on any property acquired or used by it for the

4.   See, in addition to *Ayala v. Philadelphia Board of Education, supra; Falco v. Pados,* 444 Pa. 372, 282 A.2d 351 (1971), (parental immunity abolished) and *Flagiello v. Pennsylvania Hospital,* 417 Pa. 486, 208 A.2d 193 (1965) (charitable immunity abolished).

purposes provided in this act, and the bonds or other securities and obligations issued by the commission, their transfer and the income therefrom, including any profits made on the sale thereof, shall at all times be free from taxation within the Commonwealth." The Act grants the Commission broad powers, among which are the following:

to "make necessary rules and regulations for its own government", § 4 of the Act, 36 P.S. § 652d;

to "acquire, own, use, hire, lease, operate and dispose of personal property, real property and interests in real property", *id.*;

to "make and enter into all contracts and agreements necessary or incidental to the performance of its duties and the execution of its powers", *id.*;

to "employ engineering, traffic, architectural and construction experts and inspectors and attorneys, and such other employees as may be necessary in its judgment, and fix their compensation", *id.*;

to "acquire by condemnation . . . any lands, rights, easements, franchises and other property deemed necessary or convenient for the construction or the efficient operation of the turnpike", § 6 of the Act, 36 P.S. § 652f; and

to "provide . . . for the issuance of turnpike revenue bonds of the Commonwealth for the purpose of paying the cost . . . of the turnpike", § 8 of the Act, as amended, 36 P.S. § 652h.

The Act establishes a close relationship between the Commission and the Department of Highways of the Commonwealth.[5] Section 4 provides "that all contracts and agreements relating to the construction of the turn-

---

5. Since enactment of the Act of 1937, the Department of Highways has been replaced by the Department of Transportation. See the Act of May 6, 1970, P.L. 356, No. 120, § 11, 71 P.S. § 511 (Supp.1974). Because the Act refers to the Department of Highways, we shall do likewise in this opinion.

pike and connecting tunnels and bridges shall be approved by the Department of Highways, and the turnpike and connecting tunnels and bridges shall be constructed under the supervision of the Department of Highways." The Department must also approve all purchases of "tunnels, whether wholly or partly constructed, rights of way, franchises, easements and other interests in lands . . .." " § 5 of the Act, 36 P.S. § 652e. The Act also provides that "[t]he turnpike when completed and opened to traffic shall be maintained and repaired by and under the control of the commission through the Department of Highways of the Commonwealth . . .." " § 12 of the Act, 36 P.S. § 652l. Ultimately, when all Turnpike bonds have been paid or provided for, it is contemplated that the Commission will be dissolved and its assets vested in the Department, with the Turnpike becoming part of the system of State Highways, § 15 of the Act, 36 P.S. § 652o.

The Act, however, is meticulous in providing that the Commission and the Commonwealth shall be financially independent of one another. The Commission is required to reimburse the Department of Highways for any expenditures it has made in connection with the engineering of the Turnpike or its maintenance and repairs. See Sections 3 and 12 of the Act, 36 P.S. §§ 652c and 652l. More importantly, the Act stipulates that the funded debt of the Commission is not to be a Commonwealth obligation. Section 2 of the Act, 36 P.S. § 652b, provides:

"That turnpike revenue bonds issued under the provisions of this act shall not be deemed to be a debt of the Commonwealth or a pledge of the faith and credit of the Commonwealth, but such bonds shall be payable exclusively from the fund herein provided therefor from tolls. All such bonds shall contain a statement on their face that the Commonwealth is not obligated to pay the same or the interest thereon except from

tolls and that the faith and credit of the Commonwealth is not pledged to the payment of the principal or interest of such bonds. The issuance of turnpike revenue bonds under the provisions of this act shall not, directly or indirectly or contingently, obligate the Commonwealth to levy or to pledge any form of taxation whatever therefor, or to make any appropriation for their payment."

See also Section 6 of the Act, 36 P.S. § 652f, exonerating the State from any liability for condemnation activities of the Commission.

Since passage of the Act of 1937, the legislature has authorized nine extensions of the Turnpike system. In each of these statutes the legislature has iterated that the Commission performs an essential governmental function, that it is exempt from taxation, and that it may exercise the power of eminent domain. Each act also preserves the powers and duties of the Commission as originally provided by the Act of 1937, continues the close relationship between the Commission and the Department of Highways, and maintains the financial independence of the Commission.[6]

To summarize: The legislature created the Turnpike Commission as a governmental entity, "an instrumentality of the Commonwealth." While it provided for close

6. See The Pennsylvania Turnpike Philadelphia Extension Act, Act of May 16, 1940, Extra Session P.L. (1941) 949, § 1 et seq., 36 P.S. § 653 et seq.; The Western Pennsylvania Turnpike Extension Act, Act of June 11, 1941, P.L. 101, § 1 et seq., 36 P.S. § 654 et seq.; The Pennsylvania Turnpike Gettysburg Extension Act, Act of January 14, 1951 (1952), P.L. 1947, § 1 et seq., 36 P.S. § 667.1 et seq.; The Pennsylvania Turnpike Delaware River Extension Act, Act of May 23, 1951, P.L. 335, § 1 et seq., 36 P.S. § 658.1 et seq.; The Pennsylvania Northeastern Extension Act, Act of September 27, 1951, P.L. 1430, § 1 et seq., 36 P.S. § 660.1 et seq.; The Pennsylvania Turnpike Northwestern Extension Act, Act of July 28, 1953, P.L. 706, § 1 et seq., 36 P.S. § 668.1 et seq.; The Pennsylvania Turnpike Keystone Shortway Act, Act of June 10, 1955, P.L. 157, § 1 et seq., 36 P.S. § 666.1 et seq.; The Pennsylvania Turnpike Southwestern Extension Act, Act of June 14, 1955, P.L. 174, § 1 et seq., 36 P.S. § 669.1 et seq.

connection between the Commission and the Commonwealth, and particularly the Department of Highways, the legislature has also made a clear distinction between the Commission and the Commonwealth, particularly with regard to financial matters. The statutory scheme was obviously designed to provide for the construction and maintenance of the Turnpike, but explicitly without the assumption by the Commonwealth of any liability or responsibility in connection therewith. Eventual assimilation of the Turnpike into the State highway system is envisaged, but not until such time as the obligations of the Commission shall have been fully paid, or their payment provided for through a trust arrangement.

The applicable statutes do not expressly address the question of whether the Commission is an integral part or the Commonwealth; nor do they otherwise furnish a clear answer to this question. We must, therefore, look for further guidance to the judicial decisions in cases in which the status of the Commission has been involved.

B. *Court Decisions relative to the Turnpike Commission*

Since the creation of the Turnpike Commission, the courts have reached a variety of conclusions as to its nature. Apparently the first case in which the status of the Commission was an issue was *Hunkin-Conkey Constr. Co. v. Pennsylvania Turnpike Commission*, 34 F. Supp. 26 (M.D.Pa.1940). The question there was whether a suit in federal court against the Commission was barred by the Eleventh Amendment to the Constitution of the United States.[7] Holding that the suit was not barred, the court stated:

"The Pennsylvania Turnpike Commission has been given the power to create a fund through the pledging

7. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

of its own credit to defray all and any expenses which it might incur, and the State has expressly denied its own financial responsibility in the undertaking. Furthermore, the Commission has been given the power to act through its own agents, subject only to supervision by the State in a few matters. In addition, the Pennsylvania State Highway Commission, an agency of the State, existed at the time of the creation of the defendant Commission, and was qualified to carry out the duties of the defendant Commission. The fact that it was not designated to do so lends support to the contention that the Commonwealth of Pennsylvania desired to create an entity distinct and apart from itself for the purpose of constructing the turnpike.

"Taking into consideration all of the attributes of the Commission, it is my opinion that this suit has been instituted against a legal entity distinct from the Commonwealth of Pennsylvania . . . ."

Similar views as to the distinct nature of the Commission were expressed in two early common pleas court decisions. In *Brenner v. Pennsylvania Turnpike Commission*, 45 D. & C. 124 (C. P. Cumberland Co. 1942), the court held that the Commission was liable for interest and costs in eminent domain proceedings on the ground that "the Turnpike Commission is not an integral part of the Commonwealth and, therefore, cannot rely on the rule that the State is not liable for interest unless such liability is specifically imposed by statute." *Id.* at 129.[8] In *Pennsylvania Turnpike Commission v. Baldwin Bros.*, 44 D. & C. 462 (C. P. Allegheny Co. 1942), the issue was whether a bond given to the Commission to secure payment for materials and labor furnished by the subcontractors in a Turnpike construction project was subject to the provisions of the Act of June 22, 1931,. P.L. 881. The court held that the Act of 1931 was not applicable

8. The decision in *Brenner* was followed in *Ellis v. Pennsylvania Turnpike Commission*, 5 Chester Co.Rep. 189 (1952).

because "under its terms the Act of 1931 applies only to bonds which are required by the Commonwealth and are given to the Commonwealth. The bond in suit was required by and given to the Turnpike Commission and not to the Commonwealth." Finding that the Commission was neither the Commonwealth nor its agent, Judge (now President Judge) Ellenbogen characterized the Commission as follows:

"It is clear from what we have already said that the Pennsylvania Turnpike Commission is a corporation, separate and apart from the Commonwealth of Pennsylvania. Of course, as every domestic corporation, it derives its powers from the Commonwealth and is subject to the supervision of the Commonwealth of Pennsylvania, but its relationship to the Commonwealth is not that of an agent. The Commonwealth cannot issue orders to the Turnpike Commission (except in regard to matters specifically prescribed in the act creating the commission), and the commission cannot obligate the Commonwealth. The chief element of the relationship of agency is that the principal is financially responsible for the acts of his agent whenever the agent acts within the scope of his authority. Since the Commonwealth is not and under the statute cannot be made financially liable for the obligations and actions of the Turnpike Commission, the relationship of principal and agent does not exist between them.

"The Pennsylvania Turnpike Commission is an 'instrumentality of the Commonwealth', charged with the 'construction, operation, and maintenance of the turnpike' which 'shall be deemed and held to be an essential governmental function of the Commonwealth'; it was created for the benefit of the people of the Commonwealth and for the improvement of their commerce and prosperity: sec. 11, Act of May 21, 1937. But the term 'instrumentality' as used in that act is not synonymous with the term 'agency' as used in the

Act of 1931. The Turnpike Commission was created as an independent commission through which the Commonwealth exercises certain governmental functions, but not as a department or agency of the Commonwealth."

A different view of the Commission was taken by President Judge Sheely in *House v. Pennsylvania Turnpike Commission,* 45 D. & C. 677 (C. P. Dauphin Co. 1942), which, as far as we are aware, was the first case brought against the Commission for the torts of its employees. Holding that the Commission was not liable for the negligence of its employees or agents under the doctrine of respondeat superior, the court found that "[t]he Turnpike Commission is an agency of the Commonwealth for a limited and special purpose with no funds under its control but the revenues from the Turnpike which are specifically pledged for the payment of the Turnpike bonds issued to pay the costs of construction. There is nothing in the statute which authorizes the diversion of any portion of such funds for the payment of damages due to negligence of its agents or employees." 45 D. & C. at 682.[9]

In the earliest decisions of this Court in which the status of the Commission was involved it seems to have been assumed that the Commission and the Commonwealth were to be accorded the same treatment. Thus in *Pennsylvania Turnpike Condemnation Case,* 347 Pa. 643, 32 A.2d 910 (1943), it was held that the Commission, as a State agency, was not obligated to compensate the Somerset County Institution District, another State agency, for land, titled in the name of the Commonwealth, which

9. The decision in *House* was followed in *Super v. Pennsylvania Turnpike Commission,* 19 D. & C.2d 372 (C. P. Dauphin Co. 1959); *DiRenzo v. Transamerican Freight Lines,* 10 D. & C.2d 723 (C. P. Allegheny Co. 1957); *Harrell v. Porter,* 19 D. & C.2d 385 (C. P. Allegheny Co. 1958); *Caputo v. Pennsylvania Turnpike Commission,* 103 Pitts.L.J. 486 (C. P. Allegheny Co. 1955); *Malpica v. Pennsylvania Turnpike Commission,* 65 Dauph.Co. 302 (1953).

the District used for public purposes but which was condemned by the Commission; that is, the condemnation did not change the basic ownership of the land in question. Again, in *Pennsylvania Turnpike Commission v. Smith,* 350 Pa. 355, 363, 39 A.2d 139 (1944), it was assumed without discussion that, like the Commonwealth, the Commission was not liable for interest upon an arbitration award which had been rendered against it.[10]

Unlike the courts of common pleas, see note 9, *supra,* the federal district courts, with one exception,[11] have denied immunity status to the Commission, generally on the ground that the Commission was a distinct entity separate and apart from the Commonwealth.[12]

In 1959 this Court decided two cases which were to become significant in later judicial determinations of the status of the Turnpike Commission. In the first of these, *Transamerican Freight Lines v. Commonwealth,* 396 Pa. 64, 151 A.2d 630 (1959), *cert. denied,* 361 U.S. 882, 80 S.Ct. 153, 4 L.Ed.2d 118 (1959), it was held that the Turnpike was a State highway for purposes of the computation of the excise tax levied upon use of the highways of the Commonwealth by virtue of the Act of June 22, 1931, P.L. 694, as amended, 72 P.S. § 2183 et seq.[13] In the sec-

10. See also *Pennsylvania Turnpike Commission Appeal,* 351 Pa. 139, 40 A.2d 404 (1945), in which this Court held that the jurisdiction of the State Mining Commission to determine the coal to be left in place to support all lands, easements, and rights of way acquired by the Commonwealth extended to land acquired by the Turnpike Commission. The Court also indicated, however, that the jurisdiction of the Highway Mining Commission (predecessor to the State Mining Commission) over State Highway routes had not extended to the Turnpike.

11. *Masse v. Pennsylvania Turnpike Commission,* 163 F.Supp. 510 (E.D.Pa.1958).

12. See *Linger v. Pennsylvania Turnpike Commission,* 158 F.Supp. 900 (W.D.Pa.1958); *Eastern Motor Express v. Espenshade,* 138 F. Supp. 426 (E.D.Pa.1956); *Lowes v. Pennsylvania Turnpike Commission,* 125 F.Supp. 681 (M.D.Pa.1954); *Darby v. L. G. De Felice & Son, Inc.,* 94 F.Supp. 535 (E.D.Pa.1950).

13. In so holding the Court relied, *inter alia,* upon its earlier decisions in the *Pennsylvania Turnpike Condemnation Case,* 347 Pa.

ond case, *Lichtenstein v. Pennsylvania Turnpike Commission,* 398 Pa. 415, 158 A.2d 461 (1959), the Court was presented with the question whether the Turnpike Commission was liable for interest upon awards against it in eminent domain proceedings. As noted above, at least two common pleas courts had previously held that the Commission was so obligated,[14] but *Pennsylvania Turnpike Commission v. Smith,* 350 Pa. 355, 39 A.2d 139 (1944), *supra,* pertaining to interest on arbitration awards, seemed to call for a different result. The Court declined to follow *Smith.* Holding that the Commission was liable for interest on an award against it in an eminent domain proceeding, the Court speaking through Chief Justice Charles Alvin Jones, said:

"Nothing could be clearer than that claims against the Turnpike Commission are not chargeable to the Commonwealth. Yet, the above quoted statement from the *Smith* case plainly implies that the liabilities of the Turnpike Commission do not bear interest because the Commission is, in effect, the *alter ego* of the Commonwealth which is not liable for interest. This conclusion was reasoned from the fact that the Act of May 21, 1937, P.L. 774, No. 211, 36 P.S. § 652a et seq., which created the Turnpike Commission, constituted it 'an instrumentality of the Commonwealth,' performing 'an essential governmental function of the Commonwealth.' But, equally so is every legislatively ordained municipal corporation, school district or political subdivision. School districts especially afford notable examples of instrumentalities of the Commonwealth engaged in the performance of an essential governmental function, the responsibility for the discharge whereof

643, 32 A.2d 910 (1943); *Pennsylvania Turnpike Commission v. Smith,* 350 Pa. 355, 39 A.2d 139 (1944), and the *Pennsylvania Turnpike Commission Appeal,* 351 Pa. 139, 40 A.2d 404 (1945).

14. See *Ellis v. Pennsylvania Turnpike Commission,* 5 Chest.Co. Rep. 189 (1952), and *Brenner v. Pennsylvania Turnpike Commission,* 45 D. & C. 124 (C.P. Cumberland Co. 1942).

is laid primarily on the Commonwealth by the Constitution, which declares that the General Assembly shall provide for the maintenance and support of a thorough and efficient public school system. Art. X, Section 1, P.S. Certainly, no one can justifiably contend that, under the Act of 1929, as amended, governmental instrumentalities, such as school districts, municipalities and other political subdivisions are not liable for interest on awards of viewers for damages for property taken under the power of eminent domain; and no meritorious reason is apparent why the Act of 1929, as amended, is not also applicable to the Pennsylvania Turnpike Commission. *Although the Smith case was not concerned with the effect of the Act of 1929 on awards of viewers, it is herewith overruled so far as its holding equates the Turnpike Commission with the Commonwealth in respect of liability for interest on claims against it.*" (Emphasis Supplied)

Within a year of the *Lichtenstein* decision the United States Court of Appeals for the Third Circuit was confronted for the first time with the question of the Turnpike Commission's immunity from suit in torts. See *Gerr v. Emrick*, 283 F.2d 293 (3rd Cir. 1960). Relying upon *Lichtenstein*, the court of appeals held that the Commission was amenable to suit. After discussing *Lichtenstein* in the light of previous lower court decisions, state and federal, the Court deduced the following as to the law of Pennsylvania on the subject:

"It seems clear . . . that the Supreme Court of Pennsylvania in Lichtenstein did not subscribe to the concept of the Pennsylvania Common Pleas Courts that the Pennsylvania Turnpike Commission is the alter ego of the Commonwealth of Pennsylvania, and that its status as an 'instrumentality of the Commonwealth' of 'an essential government function' endow it with the and the fact that it was engaged in the performance sovereign immunity of the Commonwealth." *Id.* at 296.

The Superior Court similarly interpreted *Lichtenstein* in *Pennsylvania Turnpike Commission v. Fulton County,* 195 Pa.Super. 517, 171 A.2d 882 (1961).[15]

It was against this background that two years later this Court decided *Rader v. Pennsylvania Turnpike Commission,* 407 Pa. 609, 182 A.2d 199 (1962). In *Rader* the Commission's claim of immunity from suit was challenged on two grounds: that the Commission did not share the Commonwealth's general immunity from liability for the negligent maintenance of its highways, and that any immunity which the Commission would otherwise enjoy was waived by the provision in its enabling act providing that the Commission "may sue and be sued." § 4 of the Act of 1937, 36 P.S. § 652d. Both contentions were rejected by the Court. As to the status of the Commission, the Court was impressed by the language in the Act of 1937 which constitutes the Commission as an instrumentality of the Commonwealth and designates the exercise of its powers as an essential governmental function. It felt also that immunity was indicated by prior judicial decision, and refused to give *Lichtenstein* the broad reach accorded it by the Court of Appeals. Accordingly, the Court concluded (Mr. Justice Musmanno dissenting) "that the Pennsylvania Turnpike Commission possesses the same immunity from liability in trespass actions arising out of the negligence of its agents and employees in the maintenance of the highway as does the Commonwealth." 407 Pa. at 621, 182 A.2d at 205 (1962). In *Thomas v. Baird,* 433 Pa. 482, 252 A.2d 653 (1969), another tort case arising from the allegedly negligent operation of a Commission motor vehicle, this

15. In *Fulton County,* the issue was whether certain lands owned by the Commission but not used for Turnpike purposes were subject to local real estate taxes. Holding that the property in question was subject to tax, the court cited *Lichtenstein* in support of the proposition that the Commission's status as an instrumentality of the Commonwealth does not entitle it to all the immunities enjoyed by the Commonwealth itself. 195 Pa.Super. at 521–22, 171 A.2d 882.

Court declined (Mr. Justice Roberts dissenting) to over-rule *Rader,* finding that it was "firmly established as the law of Pennsylvania." *Id.* at 485, 252 A.2d at 654.

In restrospect, it is clear that the result reached in *Rader* was sound at the time the case was decided. As indicated at the beginning of this opinion, it was the then rule that governmental entities were immune from suit simply because they were governmental. No distinction was made between the Commonwealth on the one hand and its various political subdivisions and other bodies which perform governmental functions on the other hand. An examination of the applicable statutes leads inescapably to the conclusion that the Commission is a governmental entity.

It is equally apparent, however, that the reasoning in *Rader* which equates the Commission with the Common-wealth was not only unnecessary to the decision but also is unconvincing. It was unnecessary because the governmental nature of the Commission was at that time sufficient to establish its immunity from suit.[16] It is uncon-

---

**16.** In *Rader, supra,* 407 Pa. at 615, 182 A.2d at 202–03, the Court indicated that it was faced with a choice between two alternatives with respect to the status of the Turnpike Commission: either the Commission was part of the Commonwealth, in which case it would be immune from suits based upon its negligence in maintaining the Turnpike, or it was a "quasi-corporate agent" of the Commonwealth occupying a status like that of a county, city, township, or borough, in which case it would be subject to such suits under a line of cases including *Smith v. Snowden Township,* 348 Pa. 187, 34 A.2d 515 (1943); *Clark v. Allegheny County,* 260 Pa. 199, 103 A. 552 (1918), and *Kriebel v. Worcester Township,* 253 Pa. 452, 98 A. 686 (1916). It should be noted, however, that the rule exemplified by the cases above cited, viz., that local governmental units were liable for the negligent maintenance of the highways, was based upon statutes requiring municipal officers to keep streets and roads in repair. Such statutes were construed as a waiver of governmental immunity. Thus, a third alternative was in fact open to the Court in *Rader;* it could have held that the Commission was an entity governmental in nature but that unlike that of local governmental units, its immunity had not been waived by any statute. It is apparent, therefore, that the Court's finding in *Rader* that the Commission was part of the Commonwealth, was not necessary to the disposition of the case.

vincing because the authority upon which it rested was weak indeed. Primary reliance was placed upon *Transamerican Freight Lines v. Commonwealth*, 396 Pa. 64, 151 A.2d 630 (1959), *supra* which held that the Turnpike was a State highway for purposes of computing the excise tax upon the use of highways in the Commonwealth. In *Transamerican Freight Lines*, however, it was not necessary to decide that the Turnpike was part of the State highway system because the tax in question was imposed upon miles traveled upon all roads in Pennsylvania, including city streets. *Commonwealth v. Brink's Inc.*, 346 Pa. 296, 30 A.2d 128 (1943); see Act of June 22, 1931, P.L. 694, § 1 et seq., 72 P.S. § 2183 et seq. Which governmental unit maintained a particular road was immaterial.[17]

In deciding *Rader* as it did, the Court was obliged to side-step the rationale of its holding in *Lichtenstein v. Pennsylvania Turnpike Commission*, 398 Pa. 415, 158 A. 2d 461 (1959), *supra*. It did so by pointing to the fact that several months after *Lichtenstein* was decided we held that the Commonwealth itself, no less than the Commission, was liable for the payment of interest upon eminent domain awards. *Wolf v. Commonwealth*, 403 Pa. 499, 170 A.2d 557 (1960). While the Commission and the Commonwealth were thus again placed on an equal

---

17. The Rader court also relied upon *Ewalt v. Pennsylvania Turnpike Commission*, 382 Pa. 529, 115 A.2d 729 (1955). The issue in *Ewalt* was whether the Turnpike Commission was liable for consequential damages arising out of the construction of the Western Pennsylvania Extension. The basis of the holding that the Commission was liable for such damages was Section 6k of the Western Pennsylvania Turnpike Extension Act of 1941. The Act of 1941 having authorized liability for such damages, it made no difference whether or not the Commission was otherwise generally immune from suit or, more importantly, whether any immunity it might enjoy was the same as that of the Commonwealth or was some other type of immunity. Thus, the "concession" by the Court in *Ewalt* that the Commission was correct in stating that it possessed the same immunity from suit as does the Commonwealth is more properly viewed as an assumption for the purposes of the case than a genuine decision of the point.

footing with regard to the obligation to pay interest, it cannot be gainsaid that in *Lichtenstein* this Court clearly believed it could treat the Commission and the Commonwealth differently and in fact did so.

In sum, in so far as *Rader* indicated that the immunity from suit then enjoyed by the Turnpike Commission was the same as that of the Commonwealth, the opinion in that case was unsound. Having examined all the decisions which have squarely considered the question whether the Turnpike Commission was part of the Commonwealth, we are satisfied that the majority of them, and those that are best considered, have taken the view that the Commission is separate and apart from the Commonwealth and therefore may be treated differently.[18] We accept the reasoning of those cases.

\* \* \*

There is, of course, no doubt that the Commonwealth itself could have constructed the Turnpike in the same manner that it constructs and operates its State highways. Had it done so, the State's immunity from suit would encompass actions arising in connection with the Turnpike. But the Commonwealth itself did not build *this* highway and does not maintain it. The legislature chose, instead, to delegate the accomplishment of this superhighway project to a separate entity, governmental in nature but in many respects independent of the Commonwealth. The legislature created this separate body and at the same time disclaimed any responsibility on the part of the Commonwealth for liabilities which it, the Commission, might incur. It is clear that the Commission is not an integral part of the Commonwealth, and cannot share the attributes of sovereignty which inhere in the state. It follows that the Commission is not im-

18. There is, therefore, no need for us to reconsider the holding in *Rader* that the provision in § 4 of the Act of 1937, 36 P.S. § 652d, that the Commission "may sue and be sued" is not a waiver of immunity from suit.

mune from suit in tort for the acts of its servants and agents acting in the course of their employment or agency. To the extent that prior decisions of this Court are inconsistent with this holding, they are overruled.

Since we construe the complaint to assert joint and several liability of the two defendants, the Commonwealth and the Commission, the causes of action asserted are severable. Accordingly, we affirm the order of the court below with respect to the Commonwealth of Pennsylvania and reverse it, with a procedendo, as to the Pennsylvania Turnpike Commission.

JONES, C. J., and EAGEN and O'BRIEN, JJ., would affirm the order of the Commonwealth Court in its entirety.

ROBERTS, J., filed a concurring and dissenting opinion in which NIX, J., joins.

MANDERINO, J., filed a concurring and dissenting opinion.

ROBERTS, Justice (concurring and dissenting).

I agree that the Pennsylvania Turnpike Commission is not immune from suit for the torts of its employees, and therefore I concur in the reversal of the order with respect to the Commission. However, I remain of the view, expressed on many occasions,* that sovereign im-

* E. g. *Williams v. Pennsylvania Dep't of Labor & Indus.*, 460 Pa. 581, 582, 333 A.2d 924–25 (1975) (dissenting opinion of Roberts, J., joined by Nix, J.); *McCoy v. Commonwealth*, 457 Pa. 513, 514–16, 326 A.2d 396, 397–98 (1974) (dissenting opinion of Roberts, J., joined by Nix & Manderino, JJ.); *Sweigard v. Pennsylvania Dep't of Transp.*, 454 Pa. 32, 35–38, 309 A.2d 374, 376–77 (1973) (dissenting opinion of Roberts, J., joined by Nix & Manderino, JJ.); *Brown v. Commonwealth*, 453 Pa. 566, 577–79, 305 A.2d 868, 871–72 (1973) (dissenting opinion of Roberts, J., joined by Nix & Manderino, JJ.); *Biello v. Pennsylvania Liquor Control Bd.*, 454 Pa. 179, 187–92, 301 A.2d 849, 853–56 (1973) (dissenting opinion of Nix, J., joined by Roberts, J.); cf. *Ayala v. Philadelphia Bd. of Public Educ.*, 453 Pa. 584, 305 A.2d 877 (1973).

munity is an archaic doctrine productive of little but mischief and injustice. Therefore, I dissent from the affirmance of the order with respect to the Commonwealth.

NIX, J., joins in this concurring and dissenting opinion.

MANDERINO, Justice (dissenting and concurring).

I join in the majority's opinion and order reversing as to the Pennsylvania Turnpike Commission. I dissent from the majority's order affirming with respect to the Commonwealth of Pennsylvania for reasons stated in my dissenting opinion in *Brown v. Commonwealth*, 453 Pa. 566, 305 A.2d 868 (1973).