388 A.2d 1049
**Joseph KENNEDY, Appellant,**

v.

**DELAWARE RIVER JOINT TOLL BRIDGE COMMISSION.**

Supreme Court of Pennsylvania.

Argued March 7, 1978.

Decided July 14, 1978.

Jack Sirott, Bristol, for appellant.

Robert W. Valimont, William E. Benner, Reeves, Bowen & Valimont, Doylestown, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

PER CURIAM.

On January 3, 1974, appellant Joseph Kennedy was injured when the automobile he was operating skidded on the Lower Trenton Bridge over the Delaware River between Trenton, New Jersey, and Morrisville, Pennsylvania, and crashed into the structure of the bridge. Kennedy filed an action in trespass in the court of common pleas alleging that his injuries were the result of negligent maintenance of the

bridge by the appellee Commission. Preliminary objections, consisting of a demurrer and a motion raising a question of jurisdiction of the court of common pleas, were filed by the Commission. The court of common pleas, being of the view that it lacked jurisdiction,[1] ordered the case transferred to the Commonwealth Court.[2] The demurrer, which relied on the Commission's entitlement to sovereign immunity, was renewed in the Commonwealth Court,[3] and that court sustained the demurrer. 23 Pa.Cmwlth. 662, 354 A.2d 52 (1976). This appeal followed.[4]

In *Mayle v. Pennsylvania Department of Highways,* 479 Pa. 384, 388 A.2d 709, decided this day, sovereign immunity has been abolished as a defense in trespass actions in the courts of this Commonwealth. Our decision in *Mayle* is controlling here, and compels the conclusion that appellee's preliminary objections should not have been sustained on the ground of sovereign immunity.[5] Accordingly, the order of the Commonwealth Court is reversed, and the case remanded to that court for further proceedings consistent with this opinion.

It is so ordered.

POMEROY, J., filed a concurring opinion.

EAGEN, C. J., and O'BRIEN, J., dissent.

1. See Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, art. IV, § 401(a)(1), 17 P.S. § 211.401(a)(1) (Supp.1978).

2. Compare Commonwealth Court Act, Act of January 6, 1970, P.L. (1969) 434, No. 185, § 9(b), 17 P.S. § 211.9(b) (Supp.1978) (repealed by Section 509 of the Appellate Court Jurisdiction Act, *supra* note 1, 17 P.S. § 211.509(a)(7)).

3. See the discussion of the practice of raising immunity from suit by way of demurrer in *Freach v. Commonwealth,* 471 Pa. 558, 564 n. 6, 370 A.2d 1163, 1166 n. 6 (1977).

4. Appellate Court Jurisdiction Act, *supra* note 1, art. II, § 203, 17 P.S. § 211.203.

5. Because of our disposition on this ground, we do not reach the other issues raised in this appeal.

POMEROY, Justice, concurring.

Although I cannot join the majority's rationale in this case,[1] I concur in the result because in my view the appellee Delaware River Joint Toll Bridge Commission ("the Commission") is not an "integral part of the Commonwealth" as that phrase is explained in *Specter v. Commonwealth,* 462 Pa. 474, 341 A.2d 481 (1975), and *Yancoskie v. Delaware River Port Authority,* 478 Pa. 396, 387 A.2d 41 (1978).

The Commission is in many respects similar to the interstate body involved in *Yancoskie,* the Delaware River Port Authority. The Commission too is the creature of an interstate compact between the Commonwealth of Pennsylvania and the State of New Jersey,[2] and its powers are virtually identical to those of the authority.[3] In addition, the discussion in *Yancoskie* of the pertinent judicial decisions involving the status of interstate authorities in the governmental

1. See *Mayle v. Pennsylvania Department of Highways,* 479 Pa. 384, 408, 388 A.2d 709, 721 (1978) (POMEROY, J., dissenting).

2. Act of June 25, 1931, P.L. 1352, § 1, *as amended,* 36 P.S. § 3401 (1961 & Supp.1978); 1934 N.J. Laws c. 215, p. 498, *as amended,* N.J.Stat.Ann. §§ 32:8–1 to :8–16 (1963), *consented to by, inter alia,* Act of August 30, 1935, c. 833, § 9, 49 Stat. 1058.

3. Like the Delaware River Port Authority, the Commission is designated as a "public corporate instrumentality of the Commonwealth of Pennsylvania and the State of New Jersey . . . exercising an essential governmental function . . . ." 36 P.S. § 3401, Art. I. It too is granted "perpetual succession" (*id.* Art. II(a)); has power to acquire, use and dispose of real and personal property (*id.* Art. II (i), (j)); may "exercise the power of eminent domain" (*id.* Art. II(m)); may hire and compensate its own employees (*id.* Art. II(f)). The Commission, like the Authority, is also empowered "generally to exercise, in connection with its property and affairs and in connection with property under its control, any and all powers which might be exercised by a natural person or a private corporation in connection with similar property and affairs" (*id.* Art. II(p)). Although the Commission is permitted to appoint the Pennsylvania Department of Property and Supplies as its agent "to prescribe standards and specifications and make contracts and purchases of various materials and services," (*id.* Art. X(j.1) (Supp.1978), added by the Act of June 28, 1968, P.L. 279, No. 134, § 1), this provision does not approach the statutorily mandated "close relationship" that the Pennsylvania Turnpike Commission has with the Pennsylvania Department of Transportation. See *Specter, supra,* at 480–81, 341 A.2d 481.

structure of Pennsylvania applies with equal force to the present case.[4]  Although the financial structures of the two entities are somewhat different (due principally to the succession of statutes pertaining to the Commission), I do not find the difference to be controlling.

Whether a particular entity is financially independent of the central government of the Commonwealth is a critical element in an analysis of whether it is an "integral part of the Commonwealth."  Like the Delaware River Port Authority in *Yancoskie,* the Commission in the case at bar operates a number of toll bridges paid for by revenues raised from the sale of bonds, which obligations are repaid through tolls and other user charges.  36 P.S. § 3401, Art. V, Art. X(i).  But the construction of the Lower Trenton Bridge, the negligent maintenance of which is at issue in this case, was not so financed.  That bridge was built by a prior interstate body using direct appropriations from Pennsylvania and New Jersey,[5] and its operation is governed in part by a statute which antedates the interstate compact and remains in force.  Act of May 8, 1919, P.L. 148, §§ 1–8, 36 P.S. §§ 3271–3278 (1961).[6]  Section 7 of the Act of 1919 provides that the bridge is to be operated "in the joint names of the Commonwealth of Pennsylvania and the State of New Jersey  .  .  .  free of charge to the traveling public  .  ."  and the bridge's free status is expressly preserved by the later interstate compact.[7]  Since the bridge is not self-sustaining through tolls, Section 8 of the Act provides that

4.  See 478 Pa. at 402–406, 387 A.2d at 44–46.

5.  Act of May 6, 1927, P.L. 846, §§ 1, 10, 36 P.S. § 3341, and Historical Note thereto (1961).

6.  Section 10 of the Act of 1927, *supra* note 5, 36 P.S. § 3349, incorporates by reference the governing provisions of the Act of 1919, as does Article II(o) of the compact.

7.  Article X(i) of the compact states, in pertinent part, that "no tolls shall be charged or collected for the use of any bridge now operated by the [C]ommission as a free bridge, but only for the use of bridges constructed or acquired by the [C]ommission under the provisions of this compact or agreement."

Pennsylvania and New Jersey shall each assume half the obligations of funding the cost of maintenance.

The Commission urges that since ownership of the free bridges remains vested in the Commonwealth of Pennsylvania and the State of New Jersey, and since direct funding of the maintenance of those bridges continues to come from the governments of those two states, a suit drawing in question the Commission's maintenance of such a bridge is in actuality a "suit against the Commonwealth", and as such proscribed, in the absence of legislative authorization, by Article I, Section 11 of the Pennsylvania Constitution. I am unable to agree. The same Section 8 of the Act of 1919 which provides for funding of the costs of maintenance of free bridges by the two states also declares that such bridges are "in the charge and control of [the] [C]ommission . .", thereby placing the duty of care squarely on the Commission's shoulders. Moreover, the interstate compact, like the legislative enactments under which the Pennsylvania Turnpike Commission in *Specter* and the Delaware River Port Authority in *Yancoskie* operate, requires that the Commission's acts be the Commission's responsibility when it states that "[n]otwithstanding any provision of this agreement, the [C]ommission shall have no power to . . . create any debt against [the] Commonwealth . . ."[8] Given this allocation of responsibility, the partial funding of the Commission's maintenance of free bridges by the Commonwealth does not make such maintenance an activity of the Commonwealth.[9] Thus it seems to me that what was said in *Specter,*

8. Compare the legislative provisions quoted in *Specter, supra,* 462 Pa. at 481–82, 341 A.2d 481, and *Yancoskie, supra,* 478 Pa. at 402, 387 A.2d at 44.

9. Many local governments and school districts also depend, in part, on appropriations from the Commonwealth for the performance of their duties. Yet the liability in tort of these entities is now firmly established. *Ayala v. Philadelphia Board of Education,* 453 Pa. 584, 305 A.2d 877 (1973). Moreover, the declaration in the compact that the Commission is an "instrumentality of the Commonwealth . . exercising an essential governmental function," 36 P.S. § 3401, Art. I, is not determinative, as this Court stated almost twenty years ago, speaking through Mr. Chief Justice Charles Alvin Jones in *Lichten-*

*supra,* 462 Pa. at 492–93, 341 A.2d 481, 491, is equally applicable here:

> "The legislature created this separate body and at the same time disclaimed all responsibility on the part of the Commonwealth for liabilities which it, the Commission, might incur. It is clear that the Commission is not an integral part of the Commonwealth . . . It follows that the Commission is not immune from suit in tort for the acts of its servants and agents acting in the course of their employment or agency."

On the basis of this analysis of the origin, nature and powers of the Delaware River Joint Toll Bridge Commission, I concur in the result reached by the Court in the case at bar.

*stein v. Pennsylvania Turnpike Commission,* 398 Pa. 415, 419–20, 158 A.2d 461 (1959), quoted in *Specter, supra,* 462 Pa. at 488–89, 341 A.2d 481.

Although it may be that any and all judgments that the Commission might conceivably incur could not be satisfied from revenues derived from bridge revenue bond sales because of the limited purposes for which such bonds may be sold under the compact, 36 P.S. § 3401, Art. X(b), there are no such limitations on the purposes to which other types of bonds (see *id.* Art. II(r)) and tolls and other user charges may be put. So far as tolls are concerned, Article V of the compact provides that funds so raised "shall be at least sufficient to meet interest and sinking fund charges on bonds and other obligations . . . the maintenance of such [toll] bridge[s], and the administrative expenses of the [C]ommission properly chargeable to such bridge[s]." See also Art. X(i). But this constitutes a floor, not a ceiling, on the Commission's powers. In addition, the proviso in Article X(i) of the compact that "no tolls shall be charged or collected for the use of any bridge now operated as a free bridge" refers to the utilization of a free bridge by the public, not the uses which the Commission may make of moneys collected on toll bridges.