## McCalmont v. Pennsylvania Turnpike Commission

*Barton A. Haines*, for plaintiffs Jack McCalmont and Eleanor McCalmont.

*William B. Joachim Jr.*, for plaintiffs Robert Walsh and Olga Walsh.

*James R. Moyes* and *Mark E. Garber Jr.*, for defendant PennDOT.

*Gabriel L. I. Bevilacqua*, for defendant Pennsylvania Turnpike Commission.

DOWLING, *J.*, October 17, 1988 — Defendants' motions for summary judgment pose novel questions concerning the meaning and scope of the legislatively created exceptions to sovereign immunity. 42 Pa.C.S. §8521 et seq. The Pennsylvania Department of Transportation and the Pennsylvania Turnpike Commission each contend that they are immune and that plaintiffs' allegations of negligence fail to place their cause of action within any of the nine exceptions to sovereign immunity. For the reasons that follow, we will grant the department's motion for summary judgment and will deny the commission's motion.

This lawsuit stems from a head-on collision that occurred on November 11, 1983, near milepost 49.9 on the Northeast Extension of the Pennsylvania Turnpike. At the time and place of the accident, the roadway was undergoing extensive repairs which necessitated a change in traffic patterns. The northbound lane was shared by both northbound and southbound traffic, each direction being only one lane. Plaintiffs Eleanor and Jack McCalmont were travelling north in the northbound lane when their vehicle collided with a car driven by plaintiff Olga

Walsh who was travelling south. As a result of the collision, all three plaintiffs suffered severe injuries. The gravamen of their complaints is that defendants failed to install traffic separation devices, such as concrete medial barriers, to provide a positive separation between the two lanes of oncoming traffic.

I

Before we rule on the substantive questions, we must first decide whether the court should allow the commission to amend its answer. This action was commenced by an initial complaint filed July 15, 1985 which named the commission, Stabler Construction Company, Eastern Industries Inc., and Elco-Hausman Construction Corporation as defendants. The commission filed an answer with new matter on August 14, 1985 which failed to include the defense of sovereign immunity. Plaintiffs filed suit against the Department of Transportation by way of a writ of summons on November 9, 1985 and later filed a complaint against the department on February 12, 1986. Both actions were consolidated by order of the Honorable Clarence C. Morrison on October 30, 1987.

On May 22, 1988, new counsel entered their appearance on behalf of the commission, and on June 17, 1988, the commission filed a petition for leave to amend the answer and new matter. The commission proposes to add the affirmative defenses of sovereign immunity, assumption of risk, the Pennsylvania Motor Vehicle Responsibility Act and the unconstitutionality of plaintiffs' claims for punitive damages. Five days after the petition to amend was filed, plaintiffs filed a certificate of readiness dated June 22, 1988. The matters have been briefed and

were argued during pretrial argument court held on September 26, 1988 and are now ready for dispositon.

Both plaintiffs and the commission cite cases which they contend support their positions. It is admittedly difficult to reconcile these cases. However, two principles have emerged rather clearly regarding amendment of pleadings: (1) the right to amend is discretionary with the court and is dependent upon the unique facts and circumstances of each case; and (2) if anything, the balance tips in favor of granting the right in the face of valid competing arguments, so that conflicts may be fully and fairly resolved on their merits. Two rules guide our decision:

"A party, either by filed consent of the adverse party or by leave of court, *may at any time* change the form of action, correct the name of a party or *amend his pleading* . . . ." (emphasis supplied) Pa.R.C.P. 1033, 42 Pa.C.S. Rule 126 prescribes the manner in which the rules are to be interpreted:

"The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties."

These rules have been construed to allow amendments "with great liberality at any stage of the case unless they violate the law or prejudice the rights of the opposing party." *Gutierrez v. Pennsylvania Gas & Water Co.*, 352 Pa. Super. 282, 286, 507 A.2d 1230, 1232 (1986). Plaintiffs apparently contend that the proposed amendment violates the law.*

---

* See section II, *infra.*

However, the main thrust of their argument is that they need not demonstrate any prejudice to justify a denial of the petition, given the length of the delay — 35 months — and the reason for the delay — inexcusable neglect. Furthermore, they contend that if prejudice is required, they have met this requirement because substantial discovery has been completed "without the benefit of plaintiffs being aware that defendant Pennsylvania Turnpike Commission would assert the aforementioned defenses." We are constrained to disagree.

While unreasonable delay is a factor that must be weighed, *Gutierrez, supra,* is committed to the rule that delay, in itself, is not sufficient to sustain a denial of a petition to amend. 352 Pa. Super. at 287, 507 A.2d at 1233; citing *Brooks v. McMenamin,* 349 Pa. Super. 436, 503 A.2d 446 (1986). Additionally, no unfair surprise will result since this defense should have been anticipated. In any event, plaintiffs were informed as early as November 18, 1985, by way of interrogatories, that the commission intended to rely upon the statutory limitation of damages provision found in the immunity act (42 Pa.C.S. §8528). Finally, little or no additional discovery will need to be taken, as the proposed defense will not change the focus of this lawsuit, and hence will not delay the trial. We will therefore allow the commission to amend its answer to include the aforementioned defenses.

## II

The commission's motion for summary judgment is based upon the assertion that plaintiff's cause of action does not fall within any of the exceptions to sovereign immunity. The only exception applicable is section 8522(b)(4) which provides:

"(4) *Commonwealth real estate, highways and sidewalks* — A dangerous condition of commonwealth agency real estate and sidewalks, including commonwealth-owned real property, leaseholds in the possession of a commonwealth agency and commonwealth-owned real property leased by a commonwealth agency to private persons, and highways under the jurisdiction of a commonwealth agency, except conditions described in paragraph (5) [not applicable here].

Before deciding the question of whether plaintiffs' claims fall within the above exception, we must determine whether the commission is entitled to immunity at all. Plaintiffs argued in their brief in opposition to the commission's petition to amend that the defense of sovereign immunity is meritless based on the case of *Specter v. Commonwealth,* 462 Pa. 474, 341 A.2d 481 (1975). *Specter* overruled prior decisions regarding the immunity of the commission and held "[i]t is clear that the commission is not an integral part of the commonwealth and cannot share the attributes of sovereignty which inhere in the state. It follows that the commission is not immune from suit in tort for the acts of its servants and agents acting in the course of their employment or agency." *Id.* at 493-4, 341 A.2d at 491. *Specter* was followed by the famous (infamous?) case of *Mayle v. Pennsylvania Department of Highways,* 479 Pa. 384, 388 A.2d 709 (1978) which completely abolished the doctrine of sovereign immunity and overruled all other inconsistent decisions. However, at the time that *Mayle* was under consideration in the Supreme Court, the general assembly's Joint State Government Commission had issued a report in May 1978 entitled "Sovereign Immunity" which recommended the resurrection of sovereign immunity in all but eight specific areas. On September

28, 1978, sovereign immunity was restored in Pennsylvania by virtue of Title I, Pa.C.S. §2310 and is governed by the procedures outlined in Title 42 Pa.C.S. §8521, et seq.

The initial question is whether the commission is a "commonwealth agency" as that term is used in subsection (b)(4), quoted above. Commonwealth agency is defined as "Any executive agency or independent agency." 42 Pa.C.S. §102. The term independent agency includes, "Boards, commissions, authorities and other agencies and officers of the commonwealth government which are not subject to the policy supervision and control of the governor. . . ." *Id.* We believe the Turnpike Commission fits squarely within the meaning of independent agency and is thus entitled to immunity protection. The Turnpike Commission has its own mission, is cloaked with its own authority to carry out its objectives, and is financially independent from the commonwealth. *Specter, supra;* 36 P.S. §§652b, 652c and 652-1. This conclusion is buttressed by the Joint State Government Commission's report and persuasive precedent. On page 11, footnote 2 of the report, the drafters specifically included the Turnpike Commission within the term "independent agency" and cited *Specter* as the impetus. See also *Toombs v. Manning,* 855 F.2d 453 (3d Cir. 1987) (declaring the commission to be an independent agency).

Both the department and the commission argue that plaintiffs have not satisfied the requirements of subsection(b)(4). The operative language of that section requires, "A dangerous condition of . . . highways under the jurisdiction of a commonwealth agency. . . ." The commission focuses solely on the first element, that there be a "dangerous condition *of*" a highway. The department, on the other

hand, contends that it is not the "commonwealth agency" responsible for the turnpike and is therefore immune, Thus, we must initially decide whether, on the record before us, there is a genuine issue as to the material fact of dangerous condition. If there is not, our inquiry is at an end. If there is, the commission's motion for summary judgment must be denied, and we must address the department's argument which disclaims responsibility for acci-dents on turnpike highways.

The commission's motion is based on purely legal argument — no evidentiary submissions have been presented to the court — therefore, the prohibition against the non-moving party's reliance on the allegations of his pleadings does not apply. Pa.R.C.P. 1035(d); *Sullivan v. ICA Mortgage Corp.*, 108 Dauphin Rep. 247 (1988). The commission first seeks to downplay its responsibility by arguing that the mere issuance of a contract and specifications for work that was' performed by independent contractors cannot, as a matter of law, be equated with a "dangerous condition" of a highway. This argument is without merit.

It is undisputed that the commission owns the land on which the turnpike is located. *Shirks Motor Express Corp. v. Messner,* 375 Pa. 450, 100 A.2d 913 (1953). As the owner of the turnpike, the commission has a duty to take all reasonable precautions necessary to eliminate "dangerous condition[s]." That a third party contracted to perform repair work does not relieve them of this responsibility. Moreover, at least one of plaintiffs' several allegations of negligence concerns a failure on the part of the commission to require the use of lane-separation devices pursuant to state and federal regulation.

The commission's final contention is even more tenuous. It is argued that the construction work *on* the Northeast Extension was not a "dangerous condition *of* [the] highway." The commission attempts to analogize the facts of this case to two cases that have recognized this distinction. In *Ambacher v. Penrose*, 92 Pa. Commw. 401, 499 A.2d 716 (1985), plaintiff sued the City of Philadelphia for injuries she sustained after she tripped on a wire fence that covered part of a city-owned sidewalk. The trial court dismissed the complaint against the city and was affirmed on appeal because the complaint failed to allege "any physical defect directly related to the sidewalk." *Id.* at 403, 499 A.2d at 717. "Properly interpreted, section 8542(b)(7) permits imposition of municipal liability for structural or integral defects *of* the sidewalk rather than *on* the sidewalk." *Id.* at 403-4; 499 A.2d at 717-8. (emphasis in original) Similarly, in *Zaykowski v. Luzerne County Housing Authority*, 78 Luzerne Leg. Reg. 155 (1987), the court held that a buildup of snow and ice on a sidewalk is not a dangerous condition of the sidewalk.

It is true that this choice of words must be honored, as the legislature could have easily used the word "on", either alone or in addition to "of." *Zaykowski, supra*. This is particularly so in light of the narrow interpretation that we are admonished to apply to waivers of sovereign immunity. *Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987). However, in the present case it is difficult to imagine allegations of negligence which would more clearly relate to the condition of the highway itself. The fence in *Ambacher* obviously had nothing to do with the design or construction *of* the sidewalk. Likewise, the best highway in the world can be made dangerous if an individual either negli-

gently or intentionally places an object, such as a rock, *on* the road. In that situation, obviously the legislature intended to maintain immunity because the object has nothing to do with design or construction. However, if the rock is there because improper excavation or fencing along a mountainside allows rocks to fall on the road, it can fairly be maintained that such a condition is a part *of* the road.

Our conclusion that the failure to use lane-separation devices can constitute a dangerous condition is also supported by precedent. In *Snyder v. Harmon*, 102 Pa. Commw. 519, 519 A.2d 528 (1986), allocatur granted, 535 A.2d 84, allocatur denied 536 A.2d 1335, the trial court granted summary judgment in favor of the Department of Transportation which was reversed and remanded on appeal. There, the court held that the "absence of a guardrail along [a state highway] . . . is something which if corrected would have reduced the risk that travelers on the highway would fall into the strip mine." *Id.* at 526, 519 A.2d at 531. And in *Pine v. Synkonis*, 79 Pa. Commw. 479, 470, A.2d 1074 (1984), plaintiffs won a substantial jury verdict because a gap in the "medial guardrail barrier" allowed defendant's car to cross the lane and hit plaintiff's car, a nearly identical situation to the case at bar. Though the court was not called upon to construe the meaning of "dangerous condition," all of defendants in the case, who were ranking employees in the Department of Transportation, admitted that the missing median guardrail "would create a hazardous condition for motorists." *Pine, supra.* We are loathe to say otherwise. Accordingly, the commission's motion for summary judgment will be denied.

The department's motion for summary jugment is based on the argument that the commission has

exclusive ownership and jurisdiction over the turn-pike, notwithstanding its authority to review all highway construction contracts. 75 P.S. §511 et seq. In a related argument, the department also argues that no waiver of immunity exists for negligent regulation, supervision, or review. We agree.

As noted above, the commission, as an instrumentality of the commonwealth, owns the turnpike. *Messner, supra.* Furthermore, the case law is clear that immunity is the rule, not the exception. *Mascaro, supra; Davidow v. Anderson,* 83 Pa. Commw. 86, 476 A.2d 998, (1984). There is, strictly speaking, only one "commonwealth agency" that has "jurisdictioin" over the highway in question, and that is, of course, the Turnpike Commission. Moreover, it would be inconsistent to expand liability to include additional agencies whose function is regulatory in nature, in the face of expressed legislative intent to narrow liability to the agency actually responsible for the alleged dangerous condition of the highway. *Davidow, supra.*

Accordingly, we enter the following

### ORDER

And now, October 17, 1988, the Pennsylvania Turnpike's petition to amend its answer is granted, their motion for summary judgment is denied; and the Pennsylvania Department of Transportation's motion for summary judgment is granted.