Pennsylvania Housing Finance Agency et al., Plaintiffs *v.* Abreen Corporation, t/a Mahanoy Building Associates et al., Defendants.

Hearing before Judge CRAIG, August 4, 1982:

*John E. Flaherty, Jr.,* with him, *Philip M. Kruger* and *Harold E. Dunbar,* Chief Counsel, for plaintiffs.

*Alan B. Rubenstein, Rackemann, Sawyer & Brewster,* for defendants.

MEMORANDUM OPINION BY JUDGE CRAIG, August 20, 1982:

The Pennsylvania Housing Finance Agency (PHFA) has addressed our original jurisdiction, filing a complaint in equity and a petition for a preliminary injunction, which seek to enjoin the American Arbitration Association (AAA) from hearing a dispute concerning a construction contract and a building loan agreement involving the PHFA, Abreen Corporation (contractor) and Mahanoy Associates

(owner).[1] In response, the contractor has filed preliminary objections.

The PHFA provided construction and permanent financing for a construction contract, in which the contractor agreed to build for the owner an apartment project for the elderly.[2] After a lengthy delay in the commencement of construction, the contractor, seeking damages against the owner and PHFA, filed a written demand for arbitration with the AAA, pursuant to contract provisions *expressly phrased by the PHFA's own supplementary general conditions*, which submit disputes involving the contractor, architect, owner and the *PHFA* to AAA arbitration.[3] The

---

[1] The defendants in this action include Abreen Corporation, t/a Mahanoy Building Associates, Mahanoy Associates and Michael J. Levitt, a general and limited partner in Mahanoy Associates and a limited partner in Mahanoy Building Associates, Donald J. Reape, a general and limited parter in Mahanoy Associates, and the American Arbitration Association.

[2] The relationship of the PHFA to the project was set forth in Article 12 of the construction contract, which provides:

It is understood and agreed that the Pennsylvania Housing Finance Agency is a third-party beneficiary with respect to the provisions of this Contract, and may enforce all the duties, obligations and responsibilities of the Owner and Contractor by any remedy available in law or equity.

It is also agreed that if a court of competent jurisdiction rules that any action or demand by the Pennsylvania Housing Finance Agency is the act of an agent for a principal, such agency relation, by reason of the Pennsylvania Housing Finance Agency's responsibility toward housing, shall be considered "coupled with an interest."

[3] The demand for arbitration was filed pursuant to Article 7.9.1 of the general conditions to the construction contract, as amended by the PHFA supplementary general conditions. Article 7.9.1 provides, in pertinent part, as follows:

All claims, disputes and other matters in question, between the Contractor, Architect, the Owner, and the Agency [PHFA], arising out of, or relating to the Contract documents or the breach thereof . . . shall be decided by arbi-

AAA has scheduled the matter for hearing on October 5, 1982.

In pursuing this action, the PHFA, seeking to avoid the express contract terms, contends that the Board of Claims is the exclusive forum to hear the contractor's claims against the PHFA, citing the act that created the Board (Board of Claims Act),[4] in particular, 72 P.S. §4651-4, which provides:

> The Board of Claims shall have exclusive jurisdiction to hear and determine all claims against the Commonwealth arising from contracts hereafter entered into with the Commonwealth, where the amount in controversy amounts to $300.00 or more . . . .

At issue is whether the PHFA is "the Commonwealth" under the Board of Claims Act. If not, the contractor also contends that the PHFA is not "the Commonwealth" under 42 Pa. C. S. §761,[5] which sets forth our original jurisdiction in civil actions or proceedings by or against "the Commonwealth."

Our Supreme Court, in *Specter v. Commonwealth,* 462 Pa. 474, 341 A.2d 481 (1975), established the analysis to be used in determining whether the various agencies and authorities created by the Pennsyl-

---

tration in accordance with the Construction Industry Rules of the American Arbitration Association obtaining unless the parties mutually agree otherwise.

[4] Act of May 20, 1937, P.L. 728, *as amended,* 72 P.S. §§4651-1-4651-10.

[5] 42 Pa. C. S. §761 provides, in relevant part:

The Commonwealth Court shall have original jurisdiction of all civil actions or proceedings:

(1) Against the Commonwealth government, including any officer thereof, acting in his official capacity, . . . .

. . . .

(2) By the Commonwealth government, including any officer thereof, acting in his official capacity, except eminent domain proceedings . . . .

vania General Assembly are to be considered "the Commonwealth." In considering whether the Pennsylvania Turnpike Commission was "the Commonwealth" so as to have sovereign immunity in connection with suits in tort, the court closely examined the commission's enabling act,[6] and said:

> While [the legislature] provided for close connection between the Commission and the Commonwealth, and particularly the Department of Highways, the legislature has also made a clear distinction between the Commission and the Commonwealth, particularly with regard to financial matters. The statutory scheme was obviously designed to provide for the construction and maintenance of the Turnpike, but explicitly without the assumption by the Commonwealth of any liability or responsibility in connection therewith.

462 Pa. at 482-483, 341 A.2d at 485. The court thus held that the commission was not "the Commonwealth" so as to have sovereign immunity, stating:

> The legislature created the separate body and at the same time disclaimed any responsibility on the part of the Commonwealth for liabilities which it, the Commission, might incur. It is clear that the Commission is not an integral part of the Commonwealth, cannot share the attributes of sovereignty which inhere in the state.

*Id.* at 493, 341 A.2d at 491.

Subsequently, in *Yancoskie v. Delaware Port Authority,* 478 Pa. 396, 387 A.2d 41 (1978), our Supreme Court relied on *Specter* in concluding that the Delaware River Port Authority was not immune from suit in trespass in the courts of this state, explaining:

---

[6] Act of May 21, 1937, P.L. 774, *as amended,* 36 P.S. §§652-652w.

In one critical particular, however, the [Turnpike] Commission and the [Port] Authority possess precisely the same status, *viz.*, both are financially independent of the Commonwealth of Pennsylvania. The Authority, like the Commission, raises revenue by means of bonds and satisfies these obligations by toll and other user charges. Moreover, and again like the Commission, the Authority's debts are not Commonwealth obligations.

*Id.* at 401-402, 387 A.2d at 45. *Accord, Transamerica Insurance Co. v. Judie, Inc.*, 30 Pa. Commonwealth Ct. 259, 373 A.2d 478 (1977) (Bureau of State Lotteries held to be "the Commonwealth" because it receives financial support from the legislature); *United Brokers Mortgage Co. v. Fidelity Philadelphia Trust Co.*, 26 Pa. Commonwealth Ct. 260, 363 A.2d 817 (1976).

This court employed the "financial independence" test in *Delaware River Port Authority v. Board of Arbitration of Claims*, 45 Pa. Commonwealth Ct. 281, 405 A.2d 600 (1979), in determining that a port authority was not to be considered "the Commonwealth" under the Board of Claims Act, saying:

We find substantial merit in affirming the classification scheme developed in Yancoskie and conclude that the Port Authority is not within the ambit of "Commonwealth" as required for the invocation of the [Board of Claim's] jurisdiction.

*Id.* at 283-284, 405 A.2d at 601. Furthermore, we concluded that the port authority was not within the statutory perimeters of the original jurisdiction of this court, noting that, "we enjoy no jurisdiction over causes asserted in contract against the Commonwealth broader than that enjoyed by the Board [of Claims]." *Id.* at 285, 405 A.2d at 602.

Relying on this line of decisions, it is clear that the financial relationship between the Commonwealth and the PHFA is the "primary factor"[7] to assist in our determination.

The financial independence of the PHFA was emphasized by our Supreme Court in *Johnson v. Pennsylvania Housing Finance Agency*, 453 Pa. 329, 309 A.2d 528 (1973), when it upheld the constitutionality of the enabling legislation that created the PHFA.[8] The court said:

> In order to finance the above programs, the General Assembly has empowered the [PHFA] to issue bonds and notes, which are to be payable out of the [PHFA's] revenue, including the proceeds of its mortgage loan . . . . the notes and bonds issued by the [PHFA] do not constitute "a debt of the Commonwealth or of any political subdivision thereof" and "that neither the faith and credit nor the taxing power . . . is pledged to the payment of the principal or of the interest on such bonds." (Citation omitted.) Furthermore, the [PHFA] is required to establish and maintain a "Capital Reserve Fund" in an amount equal to the entire principal and interest due on its outstanding bonds and notes during the succeeding calendar year.

453 Pa. at 355-356, 309 A.2d at 532.

---

[7] *See United Brokers Mortgage Co.*, where we said:

In construing the Specter decision this court has concluded that the *financial independence* of the Turnpike Commission from the Commonwealth was the *primary factor* which led the Supreme Court to conclude that the Turnpike Commission is not the "Commonwealth".

26 Pa. Commonwealth Ct. at 265, 363 A.2d at 820.

[8] Housing Finance Agency Law, Act of December 3, 1959, P.L. 1688, *as amended*, 35 P.S. §§1680.101-1680.603(a).

Furthermore, the financial independence of the PHFA from the Commonwealth is underscored in Section 1680.504(a)(c) of the Housing Finance Agency Law,[9] which provides that in the event the PHFA receives an appropriation of funds from the legislature to avoid defaulting on payments to be made on its notes and bonds, "[s]uch appropriations, if any, shall be repaid to the Commonwealth as soon as possible by the agency in excess of the amount required to make and keep the agency self-supporting." Thus the financial relationship between the PHFA and the Commonwealth is similar to that considered in *Specter*. Therefore, the PHFA cannot be considered "the Commonwealth" for purposes of jurisdiction of the Board of Claims or of this court's original jurisdiction.[10]

Accordingly, the preliminary objections are sustained, the complaint in equity is dismissed and the petition for a preliminary injunction is denied.

ORDER

Now, August 20, 1982, the preliminary objections are sustained, the complaint in equity is dismissed and the petition for a preliminary injunction is denied.

---

[9] *See* footnote 8.

[10] The presence of the Commonwealth itself as a party to this action is insufficient to vest this court with subject matter jurisdiction. The Commonwealth was not a party to any of the agreements relating to this action, was not involved in any way in the project, and is not a party to the American Arbitration Association proceeding. The complaint fails to allege what interest, if any, the Commonwealth has in this action. Thus the Commonwealth clearly lacks standing to assert any claim on this action, and its presence as a party here does not create subject matter jurisdiction in this court.