582 A.2d 55

**TRI-STATE ASPHALT CORPORATION, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania DEPARTMENT OF TRANSPORTATION, Respondent.**

Commonwealth Court of Pennsylvania.

Heard Oct. 4, 1990.

Decided Oct. 5, 1990.

Designated as Opinion to be Reported Oct. 31, 1990.

Michael D. Hughes, with him, Ralph A. Finizio, Houston, Harbaugh, P.C., Pittsburgh, for petitioner.

Robert J. Shea, Asst. Chief Counsel, Harrisburg, for respondent.

BYER, Judge.

## I. INTRODUCTION

Tri–State Asphalt Corporation (Tri–State) filed a petition for review on October 3, 1990 invoking our appellate juris-

diction under 42 Pa.C.S. § 763. The petition for review is in the nature of an appeal under Section 702 of the Administrative Agency Law, 2 Pa.C.S. § 702, from the September 27, 1990 letter of the Secretary of Transportation notifying Tri–State that it is in default under the terms of the June 6, 1989 contract between Tri–State and the Commonwealth of Pennsylvania for the resurfacing of a section of State Route 51 in Allegheny County. The September 27, 1990 letter also notified Tri–State that pursuant to the provisions of section 108.08 of the Department of Transportation's specifications, incorporated as a part of the contract, "the prosecution of the work is taken out of your hands; and that your surety, Ohio Farmers Insurance Company is being notified to that effect simultaneously, herewith, and of its obligation to complete the contract for the subject project, as well as to otherwise save and keep harmless the Commonwealth from any and all losses incurred in completing the contract in accordance with the terms and conditions of your company's surety bonds." (petition for review, exhibit "B").

Tri–State contends in the petition for review that the September 27, 1990 letter from the Secretary of Transportation constitutes an adjudication subject to judicial review under 2 Pa.C.S. § 702. Based upon its contention that the September 27, 1990 letter is an adjudication, Tri–State asserts that the Department of Transportation (DOT) erred in making the determination communicated in the September 27, 1990 letter without giving Tri–State a hearing at which it could establish its defenses to DOT's assertion of default. Tri–State contends that it was entitled to such a hearing under section 504 of the Administrative Agency Law, 2 Pa.C.S. § 504, which provides that "[n]o adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard," and that the failure of DOT to conduct such a hearing also deprives Tri–State of a valuable property right without due process of law in violation of the Fourteenth Amendment to the United States

Constitution and Article I, Section 1 of the Pennsylvania Constitution.

Tri–State also filed on October 3, 1990 an "Application for Peremptory Mandamus, Preliminary or Special Injunction, or Supersedeas Pursuant to Pennsylvania Rules of Appellate Procedure 1532 and 1781," requesting that we enjoin DOT from re-bidding the highway resurfacing project until DOT conducts a hearing under the Administrative Agency Law. Tri–State asserted it was entitled to such relief in order to preserve the status quo pending determination of its petition for review.

We granted Tri–State's request for an expedited hearing and conducted an evidentiary hearing on Tri–State's application for extraordinary relief on October 4, 1990. Prior to the hearing, DOT filed "preliminary objections and/or motion to quash" asserting this court lacks subject matter jurisdiction to consider the petition for review. Because of the important jurisdictional questions raised by DOT, and because Tri–State's brief in support of its application for extraordinary relief addressed these questions in anticipation of DOT's arguments, we also conducted oral argument on the jurisdictional issues immediately prior to taking testimony on October 4, 1990. Because the petition for review invoked only our appellate jurisdiction under 42 Pa.C.S. § 763 and did not purport to invoke our original jurisdiction under 42 Pa.C.S. § 761, as confirmed by counsel for Tri–State at oral argument, we treated DOT's filing solely as a motion to quash.

We note at the outset that counsel for both parties were extraordinarily well-prepared and presented oral argument and their clients' evidence in an excellent manner which not only was in accord with the finest notions of professionalism but also was very helpful to the court, especially considering the time constraints imposed by the exigent circumstances. We compliment counsel for both parties for a performance which should be emulated by all members of the bar.

For the reasons which follow, we grant DOT's motion to quash and deny Tri–State's application for extraordinary relief.

## II. DOT'S MOTION TO QUASH

The basic jurisdictional question in this case appears to be of first impression. Neither the parties nor the court has found any reported decision on the question of whether a notice of default or the termination of a contract by a Commonwealth agency constitutes an adjudication conferring a right to appellate review under section 702 of the Administrative Agency Law, 2 Pa.C.S. § 702. If the September 27, 1990 letter of the Secretary of Transportation is not an adjudication, then Tri–State would be lacking both a statutory right to an administrative hearing under 2 Pa.C.S. § 504 and a jurisdictional basis for any appeal from the letter under 2 Pa.C.S. § 702.

This is a contract dispute. DOT claims that Tri–State is in default under the June 6, 1989 contract. Tri–State contends that it is not in default, and that DOT's actions reflected in the September 27, 1990 letter constitute a breach of the contract.

The General Assembly, in waiving sovereign immunity with respect to actions against the Commonwealth for breach of contract, vested exclusive jurisdiction of such actions in the Board of Claims where the amount in controversy is at least $300.00. Act of May 20, 1937, P.L. 728, § 4, *as amended,* 72 P.S. § 4651–4 (Supp.1990). The June 6, 1989 contract was in the face amount of $2,496,855.65. It is obvious from the nature of this case that any suit by Tri–State against the Commonwealth for breach of the June 6, 1989 contract would involve a claim far in excess of $300.00. At the evidentiary hearing on Tri–State's application for extraordinary relief, David H. Spagnolli, DOT's Assistant District Engineer for Construction in district 11, testified that the contract was less than 50% completed from the standpoint of dollar value as of DOT's decision to

remove Tri–State from this project. Therefore, it is clear that any suit by Tri–State for damages against the Commonwealth alleging the September 27, 1990 letter constituted a breach of contract could not be filed in this court pursuant to our original jurisdiction under 42 Pa.C.S. § 761, but could be filed only in the Board of Claims.

Our Supreme Court has held that the exclusive jurisdiction of the Board of Claims cannot be avoided by filing in this court an original jurisdiction action to enjoin termination of the contract. *See Ezy Parks v. Larson,* 499 Pa. 615, 454 A.2d 928 (1982); *Emergency Medical Services Council of Northwestern Pennsylvania, Inc. v. Department of Health,* 499 Pa. 1, 451 A.2d 206 (1982). This jurisdictional limitation on the power of courts to interfere under the guise of equitable relief in contract disputes with respect to which our General Assembly has vested exclusive jurisdiction in the Board of Claims is a corollary to the principle that contracts with the Commonwealth generally are not subject to specific performance. *See Xpress Truck Lines, Inc. v. Pennsylvania Liquor Control Board,* 503 Pa. 399, 469 A.2d 1000 (1983). It also follows from the fact that, as recognized by the Supreme Court, the General Assembly amended the statute governing jurisdiction of the Board of Claims by inserting the word "exclusive" in order to avoid any implication that Commonwealth Court could have jurisdiction over contract actions against the Commonwealth. *See Clark v. Pennsylvania State Police,* 496 Pa. 310, 314, 436 A.2d 1383, 1385 (1981).

Thus, while the Board of Claims does not have power to grant equitable relief, the General Assembly, in agreeing to waive sovereign immunity with respect to contract claims, limited those who enter into contracts with the Commonwealth to an action for damages in the event of breach. Although the Supreme Court in *Ezy Parks* recognized in *dicta* the possibility that an original jurisdiction action for equitable relief might be possible in cases "where a fundamental constitutional right for which such damages would be inadequate was irreparably threatened," 499 Pa. at 628,

454 A.2d at 935, we have found no case which has applied this possible exception in order to approve jurisdiction to enjoin a breach of contract. Tri–State's allegations would not, in our opinion, be sufficient to invoke this exception in the event Tri–State had filed an action in our original jurisdiction for a permanent injunction enjoining DOT from, in effect, terminating its contract.

■ Tri–State's resort to our appellate jurisdiction, contending that the September 27, 1990 letter is an adjudication entitling Tri–State both to appellate review in this court and to an administrative hearing, is a creative effort to avoid the exclusive jurisdiction of the Board of Claims with its corollary limitation of any remedy to damages. Although there might be some superficial logic to the argument if considered out of context, we hold that the September 27, 1990 letter cannot be construed as an adjudication, and we, therefore, lack subject matter jurisdiction over Tri–State's petition for review.

The impossibility of Tri–State's position is demonstrated by considering the nature of the process which would follow if we were to accept its position. If we were to hold that the September 27, 1990 letter constituted an adjudication, the remedy would be to vacate the "adjudication" and to remand the case to DOT for an administrative hearing— precisely the relief requested by Tri–State in its petition for review. If that were to happen, DOT's decision after the hearing also would be an adjudication, entitling any aggrieved party to appeal to this court. If Tri–State were the aggrieved party, the appeal to this court would require us to determine the merits of whether DOT properly declared Tri–State in default under the contract. If we were to agree with Tri–State, the remedy would be to reverse the adjudication and either direct that Tri–State be reinstated or declare that Tri–State could proceed with an action for damages before the Board of Claims. In either event, we would be usurping the exclusive jurisdiction of the Board of Claims to determine contract disputes with the Commonwealth. Indeed, if we could exercise such a jurisdiction, our

decision would be binding on the parties and on the Board of Claims pursuant to principles of claim or issue preclusion, which demonstrates why we cannot exercise such jurisdiction without invading the exclusive province of the Board of Claims.

Therefore, it would be absurd to conclude that the General Assembly intended to provide that a determination like the September 27, 1990 letter in this case could constitute an adjudication under the Administrative Agency Law, as the consequence would be to involve this court in deciding disputes which the General Assembly specifically intended to excise from this court's jurisdiction.

Our decision might be different if the contract between Tri–State and DOT had provided for a right to an administrative hearing prior to a determination of default. In such a case, it might be possible to afford relief by ordering a hearing without violating the exclusive jurisdiction of the Board of Claims, as our review would be limited to enforcement of contract procedures. Tri–State's contract contains nothing which would entitle it to such a hearing. Likewise, there is no statute which would expressly confer on Tri–State a right to a hearing prior to a declaration of default.

■ Although not cited by Tri–State, we have considered the Supreme Court's decision in *Young J. Lee, Inc. v. Commonwealth, Department of Revenue,* 504 Pa. 367, 474 A.2d 266 (1983). There, the Supreme Court held that a party who has an indefinite license from the Commonwealth to sell lottery tickets presented a substantial question of whether due process required a post-termination hearing, enforceable by resort to our appellate jurisdiction. The Supreme Court, however, specifically held there was no right to a pre-termination hearing and took great pains to distinguish an indefinite license granted by the Commonwealth from a contract with the Commonwealth. The evidence here fails to show that the declaration of default on this project will bar Tri–State from consideration for future state contracts, so there is no arguable basis for Tri–State to contend that the September 27, 1990 letter will have

some permanent but irreparable effect. Therefore, *Young J. Lee* does not support appellate jurisdiction in this case.

■ Because the petition for review does not invoke our original jurisdiction, our holding that the September 27, 1990 letter is not an adjudication renders it unnecessary for us to consider Tri–State's due process arguments under the United States and Pennsylvania Constitutions, as there is no jurisdictional basis for us to decide such questions in an appeal under the Administrative Agency Law in the absence of an appealable adjudication. Nevertheless, we note that Tri–State cites no authority supporting the proposition that what otherwise would be actionable as a breach of contract becomes a due process claim where the breaching party is a state government. Although the exigent circumstances prevented the court from conducting extensive research into this question, our cursory research fails to find any precedent supporting Tri–State's position. We believe that any process to which Tri–State may be due is afforded by Tri–State's ability to file an action for breach of contract in the Board of Claims.

For these reasons, we will grant DOT's motion to quash the petition for review.

### III. TRI–STATE'S APPLICATION FOR EXTRAORDINARY RELIEF

Although our decision to quash the petition for review arguably renders Tri–State's application for extraordinary relief moot, Tri–State might attempt to obtain review of our decision in the Supreme Court and could file a new application for such relief pending Supreme Court review. For this reason, and in order to avoid the necessity of a remand on this issue in the event the Supreme Court were to disagree with our decision to quash the petition for review, we will consider Tri–State's application. For the reasons which follow, we deny it.

Although Tri–State's application requests relief under both Pa.R.A.P. 1532 and 1781, we find no basis for relief

under Pa.R.A.P. 1532(a) with respect to a petition for review invoking our appellate jurisdiction, at least in view of the nature of the relief requested by Tri–State. *See* 1 G. Darlington, et al., *Pennsylvania Appellate Practice*, § 1532:1 (1986) (indicating that Pa.R.A.P. 1532(a) "applies generally to petitions for review invoking original jurisdiction"). Therefore, we consider Tri–State's application solely on the basis of the standards governing relief under Pa.R. A.P. 1781.[1]

■ The Supreme Court announced the standard governing relief in the nature of a stay pending petition for review under Pa.R.A.P. 1781 in *Pennsylvania Public Utility Commission v. Process Gas Consumers Group*, 502 Pa. 545, 467 A.2d 805 (1983). Under *Process Gas*, the applicant must establish:

1. A likelihood of success on the merits of the appeal;

2. Irreparable injury if a stay is denied;

3. Issuance of a stay will not substantially harm other interested parties; and

4. Issuance of a stay will not adversely affect the public interest. 502 Pa. at 552–53, 467 A.2d at 808–09.

Furthermore, Tri–State's application requests more than a stay. Although it requests a panoply of relief, we find it is chiefly a request for relief in the nature of an injunction pending review, in that the application requests that we not only stay the effectiveness of the declaration of default but also enjoin DOT from re-bidding the project.

---

**1.** Under Pa.R.A.P. 1781(a), an appellate court ordinarily will not consider such an application for relief unless it is first addressed to the tribunal which rendered the decision under review. By letter dated October 2, 1990, counsel for Tri–State requested the Secretary of Transportation to "preserve the status quo" pending a hearing under the Administrative Agency Law. (petition for review, exhibit "D"). Tri–State alleges in its application that DOT refused its request. Although the request was not specifically a request for relief under Pa.R.A.P. 1781 pending review in this court, and although there is no document evidencing a denial of Tri–State's request by DOT, it is apparent that DOT will not grant such relief and DOT does not object to Tri–State's application on the basis of Pa.R.A.P. 1781(a). Therefore, and considering the exigent circumstances of this case, we find that Tri–State substantially has complied with Pa.R.A.P. 1781(a).

We are unaware of any reported decisions establishing the standard for relief in the nature of an injunction pending review under either Pa.R.A.P. 1781 or the similar provision in Pa.R.A.P. 1532. Therefore, in the absence of other authority, we hold that where a party requests relief in the nature of an injunction pending review, the applicant must satisfy not only the standard announced by our Supreme Court in *Process Gas,* but also that the party satisfy the stringent requirements for a preliminary injunction, particularly the requirements that greater injury would result by refusing the injunction than by granting it and that the plaintiff's right to relief is clear. *See Valley Forge Historical Society v. Washington Memorial Chapel,* 493 Pa. 491, 500, 426 A.2d 1123, 1128 (1981). We further hold that relief in the nature of an injunction pending review is highly extraordinary, and that an applicant for such relief bears a heavy burden of proof. *See* 1 G. Darlington, et al., *Pennsylvania Appellate Practice,* § 1732:16 (1986) ("the standards for granting an injunction pending appeal must be higher than the standards for granting a supersedeas pending appeal.").

### A. *Process Gas Standard*

█ We hold that Tri–State fails to satisfy any portion of the *Process Gas* standard for the following reasons.

1. Because of our decision that we lack subject matter jurisdiction, we find that Tri–State has no probability of success on the merits of its appeal.[2] While it always is possible that a higher tribunal will disagree, we find that Tri–State lacks even a colorable claim to any likelihood of success on the merits because of the absence of any authority which arguably would support its position.

█ 2. We find that Tri–State will not suffer irreparable injury if relief is denied. If DOT acted improperly in

---

**2.** We emphasize that the "merits" for purposes of this analysis is not the merits of the underlying contract dispute, but only the merits of Tri–State's position that the September 27, 1990 letter is an adjudication entitling it both to an administrative hearing and judicial review under the Administrative Agency Law.

determining Tri–State is in default and replacing it on the project, Tri–State has a remedy for money damages for breach of contract, which it may enforce before the Board of Claims. Tri–State argues that the remedy for money damages is insufficient because of the effect of DOT's action, which received newspaper publicity, on Tri–State's reputation. We find, however, that these problems are no greater than those which would be faced by any contractor who might be accused of default by the Commonwealth.

Tri–State further asserts it will suffer irreparable injury because the September 27, 1990 letter will prevent it from obtaining future bonds and, therefore, it will not be able to bid on future jobs for which bonding is required. The testimony on behalf of Tri–State indicated that only about 20% of its current work is of a nature which does not require bonding.

We find that Tri–State's evidence falls short of supporting its claim that it will not be able to obtain future bonding. As noted earlier in this opinion, the face amount of the June 6, 1989 contract is $2,496,855.65. In response to questions from the court, Tri–State's vice president and chief operating officer testified that Tri–State currently has jobs totaling $35,000,000.00 in progress, and it has a bonding capacity, based upon its current financial statements, of $75–90 million. The evidence further shows that the Commonwealth solicited two bids for contractors to replace Tri–State, and that the bids were submitted in amounts of $1.5 million and $1.77 million. Tri–State's vice president and chief operating officer further testified that this is the first time Tri–State has ever been accused of a default, and that it has been dealing with the same bonding company for many years. In view of Tri–State's bonding capacity, its claims history, its long-term relationship with its bonding company, the amount of its potential exposure to the Commonwealth in this case and the amount of its jobs currently in progress, we find that it is unlikely that Tri–State's bonding company would completely foreclose it from obtaining all further bonds. While it is possible Tri–State might

have to provide some additional collateral, there is no evidence indicating that this would be required or that it would be beyond Tri–State's ability.

Furthermore, Tri–State did not establish the asserted likelihood that it will be "shut off" by its bonding company. We admitted into evidence over DOT's objection a "fax" copy of an October 2, 1990 letter to Tri–State from an insurance agent identified in the letter as attorney-in-fact for Tri–State's bonding company. (Petitioner's exhibit 1). The letter states merely: "The default on a public job (or any other job for that matter) is considered to be a serious black mark on your record. Until such time as we can determine the direction that this situation will take, your bidding on bonded jobs should be curtailed. Please keep me advised of your efforts." This is not a definite statement by the bonding company that it would refuse to issue future bonds, and we construe it only as advice from the insurance agent.[3] Furthermore, Tri–State's vice president and chief operating officer testified that it could take one month to two months to find another bonding company, thereby admitting the possibility of finding another bonding company in the event its current company does refuse to write future bonds. We find that a one to two month hiatus in Tri–State's ability to obtain bonds, particularly at this time of the year[4], is not irreparable harm.

**3.** We are not unmindful of testimony offered by Tri–State that on October 3 and 4, 1990, it was unable to bid on a $25,000,000 job because it could not obtain bonding. We cannot conclude from the evidence that this lack of bonding will be permanent. It might be that the bonding company needs further information to assess the amount of its potential exposure as a result of the default, and it is possible that Tri–State could obtain future bonding after meeting conditions, including the posting of collateral, which the bonding company might impose. In our experience, this would not be atypical. In any event, this one example of an inability to obtain bonding is insufficient to prove irreparable harm or to outweigh the harm to DOT and to the public interest discussed below.

**4.** Tri–State's vice president and chief operating officer testified that Tri–State's work chiefly is in Pennsylvania, Ohio and West Virginia. We take judicial notice of the fact that weather conditions in these three states result in a cyclical slow-down in road surfacing projects during the late fall and extending through the winter. The Commonwealth introduced evidence at the hearing, which we find credible,

■ 3. Tri–State failed to establish that the requested relief will not substantially harm DOT. In fact, we find that the requested relief would result in substantial harm to DOT. The evidence establishes that the current conditions of the roadway area in question create a substantial hazard, as discussed below, and that DOT is faced with a practical limit of October 31 within which to complete this resurfacing project, given the problems created by laying asphalt after that date. Therefore, granting relief to Tri–State would substantially harm DOT.

4. Tri–State failed to establish that the grant of the requested relief will not adversely affect the public interest. We find that the grant of the relief requested by Tri–State would adversely affect the public interest. The evidence establishes that the area of Route 51 in question currently is hazardous and will become an even greater hazard to those who travel on it unless the conditions are corrected immediately. The drains in some areas are as high as five inches above the current road surface, resulting in the drains not accepting storm water and creating unsafe water conditions on the roadway. If this is not corrected before the temperature falls below freezing, it could create serious skidding conditions on the roadway. In addition, there are raised manholes along the area of the roadway in question, and there already have been accidents caused by cars veering away from these manholes. If these conditions are not abated before a snowfall, the snow could cover the manholes, rendering it impossible to plow the roadway because the plows could not see the manholes and rendering it impossible for vehicles to travel on this area of Route 51. The evidence shows that currently 45,000 vehicles per day use this roadway, and there is no satisfactory alternate route.

There are businesses along Route 51 which would be adversely affected. Those who have driveways intersecting with this area of Route 51 also would be adversely affected

that the use of asphalt to surface or resurface roads generally ceases after October 31 until temperatures become warmer.

in view of the five-inch difference between the elevation of the driveways and the current roadway and the fact that the "transitions" are crumbling. For these reasons, we find that the relief requested by Tri–State would adversely affect the public interest.

## B. *Preliminary Injunction Standard*

Based upon the above, we cannot say greater injury would result by refusing the injunction than by granting it. From the evidence, we find that the opposite is true. Tri–State cannot establish that it has a clear right to relief. It simply has not carried its heavy burden of convincing the court that it is entitled to the highly extraordinary relief of an injunction pending review.

## IV. CONCLUSION

We emphasize that in quashing the petition for review and in denying the application for extraordinary relief, we express no opinion on whether DOT properly declared Tri–State to be in default and replaced it on this project. We likewise express no opinion on whether Tri–State might have a defense to DOT's contentions. We expressly refused to consider any evidence on these issues at the hearing, because the merits of the parties' contentions concerning the nature of Tri–State's or DOT's performance under the contract is irrelevant to the limited matters raised in both the petition for review and the application for extraordinary relief. While we can understand and sympathize with the position in which this places Tri–State in the event Tri–State ultimately were to prevail on the merits of its contract claims, this is neither an appropriate procedure nor an appropriate forum for the vindication of such claims. What perhaps is the main question in this dispute must be resolved another day in another tribunal.

## ORDER

For the reasons expressed in the accompanying opinion:

426 

1. The motion to quash the petition for review is granted; and

2. The application for peremptory mandamus, preliminary or special injunction, or supersedeas pursuant to Pennsylvania Rules of Appellate Procedure 1532 and 1781 is denied.