## Caparo Real Estate, Inc. v. Caparo

*Terence S. McGraw*, for plaintiffs Caparo Real Estate; Caparo New Construction Inc.

*Thomas M. Close*, for defendant, Charles Caparo & Caparo Insurance Agency.

*Elaine L. Mead*, for Commonwealth, Dept. of Labor & Industry.

OTT, *J.*, October 15, 1993—This is an appeal by defendant, State Workmen's Insurance Fund from our order denying their preliminary objections challenging the jurisdiction of the Montgomery County Court of Common Pleas and asserting the defense of sovereign immunity.

### FACTS AND PROCEDURAL HISTORY

Plaintiffs Caparo Real Estate, Inc. and Caparo New Construction (hereinafter "plaintiffs") initiated this civil action against defendants Charles Caparo individually and trading as Caparo Insurance Agency (hereinafter "Caparo Insurance") and State Workmen's Insurance

Fund (hereinafter "SWIF") by writ of summons on August 8, 1991.

Plaintiffs allege that Caparo Insurance was their sole and exclusive agent. Plaintiffs state that Caparo Insurance had the authority to obtain their insurance at such times, in such amounts, and of such kind as Caparo Insurance, in its sole discretion, saw fit. Further, Caparo Insurance received all notices and regularly paid premiums on behalf of plaintiffs. Pursuant to that relationship, Caparo Insurance placed a policy of workers' compensation insurance with SWIF in July 1986.

On September 12, 1989, an employee of the plaintiffs, Matthew Giorgio, sustained a work-related injury resulting in medical and vocational disabilities. When plaintiffs notified SWIF of the loss, they were advised that the policy of insurance had lapsed in July 1988 due to non-payment of the appropriate renewal premium. Plaintiffs assert that at no time prior to Mr. Giorgio's loss did they receive notification from Caparo Insurance or SWIF of the cancellation, renewal, lapse, or payment of premium for the policy of workers' compensation insurance. As a result of the lapse in workers' compensation insurance coverage, plaintiffs have been obligated to pay Mr. Giorgio's workers' compensation benefits and have incurred fees and expenses associated with the investigation, defense and administration of Mr. Giorgio's claim.

Counts I, II, III, and VII of plaintiff's complaint are directed to defendant SWIF. Plaintiffs allege in Count I that SWIF had a legal duty to notify plaintiffs of the lapse of, cancellation of, or the necessity to pay premiums for the continuing coverage of the policy. Plaintiffs further allege that SWIF breached this duty and was, thus, negligent. In Count II, plaintiffs allege that SWIF's failure to notify the plaintiffs properly es-

tops SWIF from denying coverage and that SWIF's continued denial of coverage constitutes a breach of contract. Plaintiffs seek money damages as a result of SWIF's alleged negligence and/or breach of contract.

In Count III, the plaintiffs seek specific performance in the nature of an order directing SWIF to perform its obligations under the contract of insurance. In Count VII, the plaintiffs plead that Caparo Insurance was the agent of SWIF resulting in the vicarious liability of SWIF as principal.

SWIF responded to the complaint by filing preliminary objections challenging the jurisdiction of the Montgomery County Court of Common Pleas and asserting the defense of sovereign immunity. Following oral argument, we denied these preliminary objections by order dated December 23, 1992, which provided:

"1. Defendant SWIF's preliminary objections in the nature of a demurrer to Counts I and VII which raise the defense of sovereign immunity are denied and dismissed on the basis of this court's determination that the Commonwealth's immunity was expressly waived under the terms of the Workmen's Compensation Act;

2. Defendant's SWIF's preliminary objections to Counts II and III challenging the jurisdiction of the Court of Common Pleas to hear the subject contract claims are denied and dismissed on the basis of this court's determination that SWIF is a legislatively created fund that is financially independent from the Commonwealth and as such, is not a Commonwealth agency subject to the original jurisdiction of the Commonwealth Court or the jurisdiction of the Board of Claims;

3. Defendant SWIF is directed to file an answer to plaintiffs' complaint within twenty days of this order."

SWIF promptly petitioned us to amend the order to include the certification language prescribed by 42 Pa.C.S. §702(b), so that it could pursue an interlocutory appeal.[1] On January 8, 1993, we denied SWIF's request.

On January 20, 1993, SWIF petitioned the Commonwealth Court for review of our refusal to include the section 702(b) certification language. On March 1, 1993, the Commonwealth Court granted the petition for review and allowed SWIF an appeal of our orders of January 8, 1993 and December 23, 1992, necessitating this opinion.[2]

---

1. Section 702(b) provides:

"Interlocutory appeals by permission.—When a court or other government unit, in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order."

2. Commonwealth Court's order dated March 1, 1993, was sent only to the Prothonotary of Montgomery County and not to the lower court. Consequently, we were unaware that the right to file an interlocutory appeal had been granted and we did not prepare an opinion. On July 1, 1993, in a memorandum opinion by Senior Judge Silvestri Silvestri, Commonwealth Court indicated it was hampered by the lack of a lower court opinion. The same day, it issued an order remanding the case to this court to issue an opinion in forty-five days and to recertify the record within sixty days. Again, the order was sent only to the prothonotary and not the court. We first became aware of the need for an opinion when the deputy prothonotary of Commonwealth Court called the court's chambers during the week of September 13. We then proceeded to prepare this opinion on an expedited basis.

ISSUES

SWIF's preliminary objections present two issues: 1) Is SWIF entitled to sovereign immunity? 2) Does the Montgomery County Court of Common Pleas have jurisdiction over all of plaintiffs' claims?

DISCUSSION

I. *Sovereign Immunity*

The Commonwealth's sovereign immunity is codified at 1 Pa.C.S. §2310 which provides:

"Pursuant to section 11 of Article I of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign and official immunity and remain immune from suit *except as the General Assembly shall specifically waive the immunity.*" (emphasis added)

Assuming *arguendo* that SWIF constitutes "the Commonwealth", a review of Pennsylvania's Workmen's Compensation Act (hereinafter "Compensation Act")[3] reveals that the Commonwealth's immunity was expressly waived by the General Assembly when it enacted the statute. The specific waiver of sovereign immunity is set forth at 77 P.S. §362 which states in pertinent part:

"The Fund may, in the name of the State Workmen's Insurance Fund, sue or be sued to enforce any right given against or to any subscriber or other person under this act...".

---

3. 77 P.S. §1, et seq.

While the legislature authorized litigation against the insurance fund it did not enact any corresponding immunity provision. Consequently, we conclude that the legislature did not intend any restrictions on the exercise of the conferred right.

SWIF insists that it is "the Commonwealth" and that it is immune from suit because plaintiff's claims do not fall within any of the nine exceptions set forth in the Sovereign Immunity Act at 42 Pa.C.S. §8522 designated "Exceptions to sovereign immunity". But, the exceptions enumerated in section 8522 are not an exhaustive recitation of the circumstances under which the Commonwealth may be sued. A violation of a statutorily imposed duty may result in liability on the part of the Commonwealth notwithstanding the lack of an applicable section 8522 exception. *Goryeb v. Dept. of Public Welfare*, 525 Pa. 70, 575 A.2d 545 (1990). (Pennsylvania Supreme Court looked at the sovereign immunity provision of the Mental Health Procedures Act, as well as section 8522 and determined that a violation of the Mental Health Procedures Act may give rise to Commonwealth liability.)

Additionally, the Sovereign Immunity Act did not supplant the waiver of sovereign immunity contained in the Workmen's Compensation Act, even though the waiver was enacted earlier. 42 Pa.C.S. §8521(a) provides:

"Section 8521. Sovereign immunity generally

(a) General rule.—Except as otherwise provided in this subchapter, no provision of this title shall constitute a waiver of sovereign immunity for the purpose of 1 Pa.C.S. §2310 (relating to sovereign immunity reaffirmed; specific waiver) or otherwise."

This section references Title 42. Accordingly, it does not impact or apply to the express waiver of immunity

contained in Title 77, at section 362. Because of this, the waiver of immunity contained in Title 77, section 362, is not inconsistent with other sovereign immunity provisions.

Moreover, we are not pursuaded that SWIF is a "Commonwealth part[y]" as defined by the Sovereign Immunity Act. 42 Pa.C.S. §8522 provides:

"Section 8522. Exceptions to sovereign immunity

(a) Liability imposed.—The General Assembly pursuant to section 11 of Article I of the Constitution of Pennsylvania, does hereby waive, in the instances set forth in subsection (b) only and only to the extent set forth in this subchapter and within the limits set forth in section 8528 (relating to limitations on damages) sovereign immunity as a bar to an action against Commonwealth parties, for damages arising out of negligent act where the damages will be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity." 42 Pa.C.S. §8522 (Purdons 1982).

"Commonwealth parties" is defined to include "Commonwealth agencies." 42 Pa.C.S. §8501. "Commonwealth agency" is defined as "an executive agency or independent agency." 42 Pa.C.S. §102. A complete list of independent agencies is set forth at section 102 of the Commonwealth Attorneys Act, 71 P.S. §732-102. *Bradley v. Pennsylvania Turnpike Commission,* 121 Pa. Commw. 51, 550 A.2d 261 (1988). SWIF is not on the list. "Executive agency" is defined as "[t]he Governor and the departments, boards, commission, authorities ... and agencies of the Commonwealth government." 42 Pa.C.S. §102. SWIF cites section 202 of the Administrative Code of 1929 as authority that it falls within this definition, but it is wrong. While section 202 ex-

pressly names the State Workmen's Insurance Board as an administrative board in the Department of Labor and Industry, SWIF does not appear in the list of departments of the Department of Labor and Industry. 71 P.S. §61. SWIF and the board are separate legislative entities. 77 P.S. §§211, 221. Thus, SWIF does not fall under the definition of an executive agency or an independent agency. If SWIF is not a "Commonwealth part[y]," whatever the effect of the statute, it cannot impact SWIF.

## II. Subject Matter Jurisdiction

The characteristics of SWIF reveal it to be a legislatively created fund, financially independent from the Commonwealth. Therefore, it is not a Commonwealth agency subject to the jurisdiction of the Board of Claims or the original jurisdiction of the Commonwealth Court.

SWIF contends that the contract claims asserted by plaintiffs are actions or proceedings falling within the ambit of the Board of Claims Act[4] and should be transferred to the Board of Claims. Section 1 of the Board of Claims Act provides, in pertinent part:

"There is hereby created an independent administrative board known as the Board of Claims, the duty of which shall be to arbitrate claims against the Commonwealth arising from contracts entered into by the Commonwealth ..." 72 P.S. §4651-1.

The jurisdiction of the Board of Claims is exclusive in such matters. *Tri-State Asphalt Corporation v. Commonwealth of Pennsylvania, Department of Transportation,* 135 Pa. Commw. 410, 582 A.2d 55 (1990).

---

4. 72 P.S. §4651-1, et seq.

However, the Board of Claims does not have exclusive jurisdiction over all claims arising from contracts entered into with all Commonwealth agencies. Being an agency of the Commonwealth does not ipso facto vest the agency with all the attributes of the Commonwealth. *Pennsylvania Housing Finance Agency v. Abreen Corp.,* 84 Pa. Commw. 571, 480 A.2d 335 (1982). See also, *Yancoskie v. Delaware River Port Authority,* 478 Pa. 396, 387 A.2d 41 (1978); *Specter v. Commonwealth,* 462 Pa. 474, 341 A.2d 481 (1975); *Delaware River Port Authority v. Board of Arbitration of Claims,* 45 Pa. Commw. 281, 405 A.2d 600 (1979). If SWIF is not the Commonwealth for the purposes of the provisions cited above, jurisdiction rests with this court as a court of general jurisdiction.

The Commonwealth Court in *Abreen,* stated that "Our Supreme Court, in *Specter v. Commonwealth* (citation omitted), established the analysis to be used in determining whether the various agencies and authorities created by the Pennsylvania General Assembly are to be considered 'the Commonwealth'." *Abreen, supra* at 574, 480 A.2d at 336. In *Specter,* the plaintiffs sued the Pennsylvania Turnpike Commission for personal injuries sustained in a motor vehicle collision with a Turnpike Commission employee. The Supreme Court concluded that the "immunity enjoyed by the Commonwealth (did) not extend to the commission." *Specter, supra* at 477, 341 A.2d at 482.[5]

---

5. The financial independence analysis discussed by the Supreme Court has been applied to questions of sovereign immunity as well as those involving jurisdiction. Indeed, the principal issue in *Specter* was whether the Turnpike Commission was entitled to sovereign immunity. The legislature responded to the *Specter* decision through the Act of October 15, 1980, P.L. 950 where it designated the Turnpike Commission as a Commonwealth Agency. 42 Pa.C.S. §102, 71 P.S.

After analyzing the Turnpike Commission's enabling legislation the *Specter* court concluded that although the Turnpike Commission possessed many sovereign attributes, it was "not an integral part of the Commonwealth." *Id.* at 493, 341 A.2d at 491. As part of its analysis, the court placed heavy emphasis on the Turnpike Commission's financial independence.

In *Abreen, supra,* a case analogous to that posed by SWIF's preliminary objections here, the Commonwealth Court invoked the *Specter* analysis to determine that the Pennsylvania Housing Finance Agency was not "the Commonwealth" for the purposes of the Board of Claims Act and the Judicial Code. Analyzing *Specter* and its progeny, the Commonwealth Court concluded that "the financial relationship between the Commonwealth and the PHFA is the 'primary factor' to assist in our determination." *Abreen, supra* at 577, 480 A.2d at 337.

Applying the financial independence test to SWIF, we think it clear that SWIF is also financially independent of the Commonwealth. SWIF was created by the Workmen's Compensation Act of 1915. As modified by various subsequent acts, it is now codified in Title 77 of the Pennsylvania Statutes. The enabling provisions creating the fund are contained in chapter 4, 77 P.S. §§201-395.

Like the Turnpike Commission and the PHFA, the General Assembly created a "separate body and at the same time disclaimed any responsibility on the part of the Commonwealth for liabilities which it ... might incur." *Abreen, supra* at 575, 480 A.2d at 337 citing

§732-102. Nevertheless, the *Specter* analysis is still valid for determining jurisdictional questions involving a party with some Commonwealth attributes.

*Specter v. Commonwealth, supra* at 493, 341 A.2d at 491. See also, 77 P.S. §221 & §223. Like the Turnpike Commission and PHFA, the legislature funded SWIF from sources other than appropriations. *Abreen, supra, Specter, supra.* In the case of SWIF the funds are generated by premiums charged to the insureds. The Commonwealth's connection to this funding source is even more attenuated than that relating to the delegation of the sovereign's power to issue bonds in the case of the Turnpike Commission and PHFA.

SWIF is overseen by a board which is made up of the Secretary of Labor and Industry, the Insurance Commissioner, and the State Treasurer. 77 P.S. §§221 & 211. Such state oversight, however, does not give SWIF the attributes of "the Commonwealth." Indeed, the close relationship of the Turnpike Commission with the Department of Highways was insufficient to vest the Turnpike Commission with the attributes of the sovereign. *Specter, supra.*

Like the Turnpike Commission and the PHFA, SWIF is obligated to repay any appropriations or expenditures of the legislature. 77 P.S. §222. Like the Turnpike Commission and the PHFA, SWIF is obligated to pay the expenses of its administration from the premiums it collects. 77 P.S. §§224, 283. The Act specifically mandates that SWIF is obligated to pay for supplies, materials, workers' compensation insurance for its employees, motor vehicles, liability insurance thereon, rental of motor vehicles from the Department of General Services, the cost of the Treasury Department of acting as custodian of its funds and making disbursements, rental of its offices in the Capital Building, water, light, heat, power and other utilities, and an annual audit of the fund. 77 P.S. §§224, 283, 301, 365. Like the PHFA, SWIF is obligated to create a surplus capital

fund to ensure that it meets its financial and insurance obligations and to warrant the continued viability of the fund. 77 P.S. §§281, 282.

Compared to the Turnpike Commission in *Specter* and the PHFA in *Abreen,* SWIF is clearly financially independent from the Commonwealth. Moreover, SWIF was not delegated some of the sovereign attributes, such as eminent domain, that weighed in favor of sovereign attribution but were insufficient to establish the relationship in *Specter* and *Abreen.* Accordingly, neither the Board of Claims nor the Commonwealth Court have original jurisdiction of this matter. Instead, this court, as a court of general jurisdiction, is vested with subject matter jurisdiction.

Our jurisdiction over this case is also supported by the Judicial Code. 42 Pa.C.S. §761(a)(i)(v) provides that the Commonwealth Court shall have original jurisdiction over all civil actions against the Commonwealth government except:

"(v) actions or proceedings in the nature of trespass as to which the Commonwealth government formerly enjoyed sovereign or other immunity and actions or proceedings in the nature of assumpsit relating to such actions or proceedings in the nature of trespass."

The Supreme Court in *Balshy v. Rank,* 507 Pa. 384, 490 A.2d 415 (1985), reviewed the scope of this section. The court concluded that "...the clear intent of the General Assembly is that actions against the Commonwealth ... for money damages based on tort liability are outside the original jurisdiction of the Commonwealth Court and are properly commenced in the courts of common pleas." *Id.* at 396, 490 A.2d at 420-21.

Because section 761(a)(i)(v) confers jurisdiction of plaintiffs' tort claims upon us, we are also vested with jurisdiction to adjudicate plaintiffs' related contract

claims. This is so because plaintiffs' tort and contract claims arise from the same factual circumstances. Accordingly, jurisdiction is properly vested in the Montgomery County Court of Common Pleas. The preliminary objections were properly dismissed.